**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Byron Tennel Lacy, et al., | ) No. CV-06-2865-PHX-FJM |
| Plaintiffs, | ) **ORDER** |
| vs. | ) |
| County of Maricopa, et al., | ) |
| Defendants. | ) |

Plaintiffs Byron Lacy (hereinafter "Lacy"), Debra Ann Finley (Lacy's mother), and Brayvon T. Lacy (Lacy's child) have alleged multiple counts against Maricopa County and County Medical Examiner Phillip Keen ("the County defendants"), and against the City of Phoenix and several individuals employed by the City of Phoenix ("the City defendants"). The court has before it the County defendants' motion to dismiss the amended complaint (doc. 40), plaintiffs' response (doc. 47), and the County defendants' reply (doc. 49). The court also has before it the City defendants' motion to dismiss the amended complaint (doc. 48), plaintiffs' response (doc. 55), and the City defendants' reply (doc. 56).

**I**

Plaintiffs seek damages for constitutional and statutory violations that allegedly occurred in connection with a criminal investigation and prosecution. On May 1, 1994, Phoenix police arrested Lacy on suspicion of his involvement in a fatal shooting in a night

club parking lot. Lacy was prosecuted and convicted of reckless manslaughter and aggravated assault and was sentenced to seventeen years. The conviction was affirmed on appeal. Lacy then filed a petition for post-conviction relief in the Superior Court of Arizona in Maricopa County. On October 25, 2002, the court granted the petition, set aside Lacy's conviction on grounds of insufficient evidence, and ordered a new trial. Upon reassignment, the court determined that a new trial was improper because double jeopardy applied and dismissed the charges against Lacy on February 23, 2003. The State appealed. On February 12, 2004, the Arizona Court of Appeals affirmed the dismissal of the charges. The Arizona Supreme Court denied review on July 15, 2004. In this action, filed June 29, 2006, plaintiffs allege that Lacy's arrest, the investigation of the crime, and his prosecution were littered with official improprieties.[1]

In the amended complaint, plaintiffs label each of the first eight counts as a "civil rights violation." In all of them, Lacy alleges violations of his federal constitutional rights. In count eight only, Lacy's mother and son assert derivative claims for the violation of Lacy's rights. In several of the civil rights counts, plaintiffs provide no authority for enforcing federal constitutional rights through an action for damages. Plaintiffs specifically invoke 42 U.S.C. § 1985 in count six, "Conspiracy." Taking the complaint in the light most favorable to plaintiff, we construe the other seven counts as invoking 42 U.S.C. § 1983, though it is only mentioned in count three. In count five, though we count it among those that invoke § 1983, plaintiffs specifically mention 42 U.S.C. § 1981.

For the purposes of our discussion, we summarize the civil rights counts. Count one, "Breach of Official Policy," alleges that the City defendants violated official policies "on evidence gathering, impounding, inventorying, securing and recording of the evidence." Am. Complaint at 18. Count two, "Breach of Duty," is somewhat repetitive and alleges that

---

[1] Though some of the facts in this paragraph were provided by court records attached to defendants' motions and do not appear in the complaint, we can include the contents of such materials in our discussion without converting the motions to dismiss into motions for summary judgment. Kourtis v. Cameron, 419 F.3d 989, 994 n.2 (9th Cir. 2005).

1  City defendants botched the handling of crime scene evidence and failed to report their
2  misconduct. Count three, "Unconstitutional Practice," alleges that County defendant Keen
3  altered his medical findings to support the police department's theory of the crime. Count
4  four, "Lack of Probable Cause," alleges that defendants continued their "prosecution" of
5  Lacy despite the mishandling of evidence that destroyed the foundation for probable cause.
6  Count five, "Equal Protection," alleges that defendants in their investigation and prosecution
7  discriminated against Lacy on the basis of race. Count six, "Conspiracy," alleges that all the
8  defendants acted in concert to deprive Lacy of his constitutional rights. Count seven, "Cruel
9  and Unusual Punishment," generally repeats the above allegations and asserts that Lacy's
10 Eighth Amendment rights were violated. Finally, count eight, "Denial of Familial
11 Association," asserts derivative claims on behalf of Lacy's mother and son.

12 Plaintiff has pled two counts in addition to the civil rights claims. Count nine alleges
13 violation of the Racketeer Influenced Crime Organizations Act ("RICO"), 18 U.S.C.
14 §§ 1961–1968. Count ten alleges violation of Arizona's analogous Organized Crime and
15 Fraud Act ("State RICO"), A.R.S. § 13-2314.04.

**II**

17 We first address the RICO claims. The elements of a federal civil RICO claim are
18 "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as
19 'predicate acts') (5) causing injury to the plaintiff's 'business or property.'" Grimmett v.
20 Brown, 75 F.3d 506, 510 (9th Cir. 1996) (citing 18 U.S.C. §§ 1964(c), 1962(c)). We dismiss
21 plaintiffs' federal RICO claim for failure to establish element four.

22 Illegal activities that constitute predicate acts for federal RICO liability are identified
23 in 18 U.S.C. § 1961(1). Paragraph 146 of the complaint contains all of the alleged "predicate
24 acts" on which plaintiffs base their RICO claims. Response to the County Defendants'
25 Motion to Dismiss at 13. Plaintiffs improperly identify as "predicate acts" alleged violations
26 of 18 U.S.C. §§ 241 and 242, which involve the deprivation of federal rights. Violations of
27 these statutes, in and of themselves, are not among the predicate acts enumerated in
28 18 U.S.C. § 1961(1).

Though the remaining predicate acts alleged by plaintiffs are identified in § 1961(1), we conclude that the factual allegations of the complaint do not support them as a matter of law. First, plaintiffs allege mail fraud under 18 U.S.C. § 1341, "which, in this case, included using the mail to deliver contaminated crime scene evidence for secondary analysis." Complaint ¶ 146. Section 1341, titled "Frauds and swindles," clearly targets economic crime and does not fit the alleged facts. Even assuming defendants knowingly mailed contaminated evidence, plaintiffs do not allege how that conduct furthered any "scheme or artifice to defraud." 18 U.S.C. § 1341.

Second, plaintiffs allege violations of 18 U.S.C. §§ 1581 and 1589. Section 1581 criminalizes "peonage," which is a "status or condition of compulsory service or involuntary servitude based upon a real or alleged indebtedness." Pierce v. U.S., 146 F.2d 84, 86 (5th Cir. 1945). The statute is plainly not relevant to the alleged facts. Similarly, § 1589 targets any person who "knowingly provides or obtains the labor or services of a person [by threats or abuse of law]." The individual defendants did not "obtain the labor or services" of Lacy. Again, the statute is plainly inapplicable on its face. As plaintiffs' allegations of predicate acts fail as a matter of law, count nine is dismissed as to all defendants.[2]

As for the state RICO claim, A.R.S. § 13-2314.04(a) provides a private cause of action to any person who "sustains reasonably foreseeable injury . . . by a pattern of racketeering activity." In turn, A.R.S. § 13-2301(D)(4)(b) defines "racketeering" as any of thirty specific predicate acts "if committed for financial gain." Though count ten alleges several predicate acts, there is no allegation that any were committed for "financial gain." In an attempt to salvage the claim, plaintiffs suggest that defendant Maricopa County earned income from the phone calls Lacy made and the sundries he purchased while incarcerated, and that the

---

[2] An additional reason requires dismissal of count nine against defendants Maricopa County and City of Phoenix: Plaintiffs concede that a municipality is immune from liability under federal RICO. Plaintiffs' Response to the City Defendants' Motion to Dismiss at 13 (acknowledging Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist., 940 F.2d 397, 404 (9th Cir. 1991).

1 individual defendants indirectly received pay raises and accolades for their successful
2 prosecution of Lacy. These contentions are feeble in the extreme and should not have been
3 raised. Count ten is dismissed as to all defendants.

## III

5 We now turn to counts one through eight, the civil rights claims. Both the County and
6 City defendants contend that the claims are untimely. Defendants assert, and plaintiffs
7 concede, that the applicable statute of limitations period for all of the claims is two years.
8 The parties disagree when they accrued. The amended complaint also names parties who
9 were not named in the original complaint. Therefore, even if the original complaint was
10 timely, unless the amendment relates back to the original pleading under Rule 15(c), Fed. R.
11 Civ. P., the claims might be untimely as to the new defendants.

### A.

13 The statute of limitations analysis of plaintiffs' claims under 42 U.S.C. § 1983 applies
14 to all of the civil rights claims. The accrual date for a § 1983 claim is a matter of federal law.
15 Wallace v. Kato, 127 S. Ct. 1091, 1095 (2007). A claim accrues "when a plaintiff has a
16 complete and present cause of action." Id. (quoting Bay Area Laundry & Dry Cleaning Trust
17 Fund v. Ferbar Corp., 522 U.S. 192, 201, 118 S. Ct. 542, 549 (1997)). As § 1983 claims
18 have many different foundations, the analogous rules in the common law of torts determine
19 the accrual date of any particular claim. See id.

20 In Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994), a prisoner serving a
21 sentence for voluntary manslaughter brought a § 1983 claim alleging that prosecutors and
22 a police investigator "had engaged in an unlawful, unreasonable, and arbitrary investigation
23 leading to [his] arrest; knowingly destroyed evidence which was exculpatory in nature and
24 could have proved [his] innocence; and caused an illegal and unlawful voice identification
25 procedure to be used at [his] trial." Id. at 479, 114 S. Ct. at 2368 (internal quotations
26 omitted). The Court held that the claim was analogous to the common law tort of malicious
27 prosecution, an element of which is the termination of the criminal proceeding in favor of the

1  accused. Id. at 484, 114 S. Ct. at 2371. Because the prisoner's conviction was still valid,
2  the Court held that his § 1983 claim was not complete. Id. at 487, 114 S. Ct. at 2372.

3  Applying this conclusion to the statute of limitations, the Court reasoned that "a
4  § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence
5  does not accrue until the conviction or sentence has been invalidated." Id. at 489–90, 114
6  S. Ct. at 2374. Though both sides here recognize this implication of Heck, they dispute its
7  application.

8  First, both the County and City defendants contend that, even applying Heck, the
9  statute of limitations on the civil rights claims has expired because plaintiffs' claims accrued
10  when the charges against Lacy were dismissed on February 23, 2003, more than two years
11  before this action was filed on June 29, 2006. Plaintiffs, meanwhile, contend that claims
12  under Heck do not accrue until the end of the State's appeal time. Specifically, because the
13  State appealed the dismissal of the charges against Lacy and then petitioned for review in the
14  Arizona Supreme Court, the claims did not accrue until the court denied review on July 15,
15  2004, which would make their June 29, 2006, filing timely.

16  Defendants contend that the dismissal of charges against Lacy on February 23, 2003,
17  satisfies the plain language of Heck that a § 1983 malicious prosecution claim accrues once
18  "the conviction or sentence has been invalidated." Id. at 490, 114 S. Ct. at 2374. Plaintiffs,
19  meanwhile, focus on the common law malicious prosecution requirement that criminal
20  proceedings *terminate* in favor of the accused. See id. at 484, 114 S. Ct. at 2371. They
21  contend that proceedings against Lacy did not terminate with the February 23, 2003, order
22  of dismissal because it could have been overturned by the State's appeal.

23  While there is some force to both arguments, we look to the reasoning underlying
24  Heck. Although Heck is factually distinguishable in that the § 1983 plaintiff was still in
25  prison for charges that had not been overturned, we find useful the Court's explanation of
26  why a malicious prosecution claim does not accrue until the criminal proceedings *terminate*
27  in favor of the accused. See id. The Court noted that the termination requirement "avoids
28  parallel litigation over the issues of probable cause and guilt." Id. (internal quotations

1  omitted). Furthermore, it honors the principle that "civil tort actions are not appropriate
2  vehicles for challenging the validity of outstanding criminal judgments." Id. at 486, 114
3  S. Ct. at 2372.

4  Smith v. Holtz, 87 F.3d 108 (3d. Cir. 1996), invoked this principle in a case much like
5  ours. In Smith, the plaintiff's convictions were reversed by the Supreme Court of
6  Pennsylvania in December 1989. The plaintiff remained in prison pending a new trial, but
7  in September 1992, the court dismissed all charges on double jeopardy grounds. When the
8  plaintiff filed his § 1983 action in September 1993, the State contended that the two-year
9  statute of limitations had expired because the claim accrued when the convictions were
10 overturned in December 1989. The Third Circuit disagreed. Relying on the purpose behind
11 the termination rule presented in Heck, the court held that a § 1983 malicious prosecution
12 claim "does not accrue so long as the potential for a judgment in the pending criminal
13 prosecution continues to exist." Id. at 113.

14 Similarly, had this plaintiff filed his civil rights claims while review of the criminal
15 proceeding was still pending in the Arizona Supreme Court, there would have been good
16 reason to bar the claims under Heck. We conclude that so long as further review can
17 reinstate a criminal conviction, or result in a new trial, a malicious prosecution action
18 constitutes an impermissible collateral attack on a prosecution still making its way through
19 the criminal justice system. Cf. Restatement (First) of Torts § 659 cmt. e (1938) ("[If] a
20 statute gives to the state a right of appeal under which a new trial may be granted, a verdict
21 of not guilty is not such a termination as will support [a malicious prosecution claim].").
22 Accordingly, insofar as plaintiff's civil rights claims are governed by Heck, they accrued
23 when the Arizona Supreme Court denied review.

24 The City defendants also contend that some of plaintiffs' civil rights claims are not
25 governed by Heck, but rather by Wallace v. Kato, 127 S. Ct. 1091 (2007), in which the
26 plaintiff alleged under § 1983 an arrest in violation of the Fourth Amendment and contended
27 that his claim did not accrue until his subsequent conviction was set aside. Id. at 1094. The
28 Court held, however, that the plaintiff had a "complete and present cause of action" much

1  earlier than the date of his ultimate exoneration because his claim was analogous to common
2  law false imprisonment, which accrues once the alleged *false* imprisonment comes to an end.
3  Id. at 1095–96.  Because false imprisonment is imprisonment without legal process, the
4  plaintiff's claim accrued  when he was bound over to a magistrate.  Id.  In essence, the
5  plaintiff's incarceration after the onset of legal process was not relevant to his false
6  imprisonment claim.

7  But Heck, not Wallace, governs those civil rights claims "that necessarily require the
8  plaintiff to prove the unlawfulness of his conviction or confinement." Heck, 512 U.S. at 486,
9  114 S. Ct. at 2372.  To be sure, plaintiffs' complaint alleges a litany of illegalities leading up
10 to Lacy's arrest and continuing through his prosecution.  However, like the claim in Heck,
11 all eight counts turn on an alleged conspiracy to implicate Lacy in a crime he claims he did
12 not commit.  See id. at 480, 114 S. Ct. at 2368; see also Amaker v. Weiner, 179 F.3d 48,
13 51–52 (2d Cir. 1999).  Thus, "deciding in his favor on any of them plainly would call into
14 question the validity of his conviction."  Amaker, 179 F.3d at 52.

15 Though we have addressed the statute of limitations issue with reference to 42
16 U.S.C. § 1983, our analysis is equally applicable to the claims under 42 U.S.C. §§ 1981 and
17 1985.  See id. at 51–52 (holding that Heck applies to any civil rights claim that calls into
18 question a criminal conviction).  Accordingly, Heck applies to all of plaintiffs' civil rights
19 claims, and the statute of limitations began running when the Arizona Supreme Court denied
20 review on July 15, 2004.

21 **B.**

22 Because plaintiffs' civil rights claims accrued on July 15, 2004, the two-year
23 limitations period had not expired when the original complaint was filed on June 29, 2006.
24 The original complaint (doc. 1, exhibit A) named as defendants Maricopa County, the City
25 of Phoenix, city employee Ronald Jones, and county employee Phillip Keen.  Thus, the civil
26 rights claims are timely as to these defendants.

27 However, the statute of limitations on the civil rights claims *had* expired when the
28 amended complaint was filed on October 5, 2007. The amended complaint adds city

- 8 -

employees Kenny Hansen, Lee Garrett, and John Doe Giesel (later amended to Ray Giesel). Therefore, unless the amended complaint relates back to the original complaint under Rule 15(c)(3), Fed. R. Civ. P., the civil rights claims are untimely as to these defendants.

Under Rule 15(c)(3), a pleading joining a new party relates back only if the party "knew or should have known that, but for a mistake concerning the identity of the proper party, the [original] action would have been brought against the [new] party." The City defendants contend, and plaintiffs by their silence concede, that this standard cannot be met in the instant action. Accordingly, counts one through eight are dismissed as to Kenny Hansen, Lee Garrett, and Ray Giesel.

## IV

### A.

Before turning to defendants' other contentions regarding the civil rights counts, we conclude that count seven, "Cruel and Unusual Punishment," does not state a claim. The Eighth Amendment to the United States Constitution, proscribing "cruel and unusual punishment," serves three purposes: (1) to limit the kinds of criminal punishment that can be imposed; (2) to proscribe grossly disproportionate punishment; and (3) to impose limits on what can be criminalized. Ingraham v. Wright, 430 U.S. 651, 667, 97 S. Ct. 1401, 1410 (1977). None of plaintiffs' allegations involve these limitations. See id. at 671, 97 S. Ct. 1412 n.40 ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions."). Count seven is dismissed as to all remaining defendants.

### B.

Next, we agree with the County defendants that counts three, six, and eight are the only remaining civil rights counts that implicate them. The other counts allege evidence mishandling and racial profiling by the City only. Accordingly, counts one, two, four, and five are dismissed as to the County defendants.

The County defendants also contend that none of the civil rights counts state a claim upon which relief can be granted against the County. It is firmly settled that a municipality

1  cannot be held vicariously liable under 42 U.S.C. § 1983 or § 1985 for the actions of its
2  employees. See Moor v. Alameda County, 411 U.S. 693, 709, 93 S. Ct. 1785, 1796 (1973).
3  Plaintiffs contend that the pleadings are sufficient for a direct claim against the County
4  without reliance on "vicarious liability," though they use the term in the complaint.

5  First, plaintiffs rely on City of Canton v. Harris, 489 U.S. 378, 109 S. Ct. 1197 (1989),
6  for the proposition that municipal liability may be based on an unofficial "policy" of
7  "deliberate indifference" in failing to train or supervise its employees. Id. at 388, 109 S. Ct.
8  at 1204. Plaintiffs have not alleged any failure in regard to the training or supervision of
9  County defendant Keen. Therefore, plaintiffs' reliance on City of Canton is misplaced.

10  Second, plaintiffs rely on Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S. Ct.
11  1292 (1986), in which the Court held that "municipal liability [under § 1983] may be
12  imposed for a single decision by municipal policymakers under appropriate circumstances."
13  Id. at 480, 106 S. Ct. at 1298. More specifically, the Court held, "municipal liability under
14  § 1983 attaches where—and only where—a deliberate choice to follow a course of action is
15  made from among various alternatives by the official or officials responsible for establishing
16  final policy with respect to the matter in question." Id. at 483, 106 S. Ct. 1300.

17  Plaintiffs allege that County defendant Keen altered his autopsy report and provided
18  false testimony in order to conspire with City police officers to wrongly convict Lacy.
19  Plaintiffs further contend that Keen "is the policymaker with final decision-making
20  authority for the Medical Examiner's Office." Response to the County Defendants' Motion
21  to Dismiss at 10 (emphasis in original). Complaint at 21–22, 26. According to the County
22  defendants, Pembaur does not apply because these allegations do not involve Keen's
23  "supervisory or policy making authority over any other employees." County Defendants'
24  Reply at 4.

25  While Pembaur did involve a municipal official giving orders to other employees, the
26  Court did not identify this fact as critical. Plaintiffs' complaint fits the plain language of
27  Pembaur that municipal liability may hinge on a singe decision by a municipal policymaker.
28  Also, as the Court noted, "whether an official had final policymaking authority is a question

- 10 -

of state law." Pembaur, 475 U.S. at 483, S. Ct. at 1300. At this pleading stage, we conclude that plaintiffs have stated a claim against both Phillip Keen and Maricopa County in counts three, six, and eight. Obviously, this does not prejudice the right of defendants to move for summary judgment once the facts are fully developed.

**C.**

The City defendants object to the civil rights claims by contending that "As a matter of law, the City cannot be held liable for malicious prosecution because it did not prosecute Lacy." Motion to Dismiss at 4. But the elements of state law malicious prosecution are not relevant, because plaintiffs do not allege state law malicious prosecution. In our order of September 25, 2007 (doc. 35), we rejected any state law claims that might have been pled in the original complaint. Aside from a state RICO claim, no state claims have been asserted in the amended complaint.

Just as the Court analogized to the tort of malicious prosecution in analyzing § 1983 claims "that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement," Heck, 512 U.S. at 486, 114 S. Ct. at 2372, we construe plaintiffs' use of the term "malicious prosecution" in the amended complaint as short-hand for the alleged constitutional violations that accompanied Lacy's arrest, the investigation of the crime, and the accumulation of evidence for his prosecution.

## V

For the foregoing reasons, **IT IS ORDERED GRANTING IN PART AND DENYING IN PART** the County defendants' motion to dismiss the amended complaint (doc. 40) and **FURTHER ORDERED GRANTING IN PART AND DENYING IN PART** the City defendants' motion to dismiss the amended complaint (doc. 48) as follows:

1) **DISMISSING** counts one, two, four, five, seven, nine, and ten against defendants Maricopa County and Phillip Keen;

2) **DISMISSING** counts seven, nine, and ten against defendants City of Phoenix and Ronald Jones; and

3) **DISMISSING** all counts against defendants Kenny Hansen, Lee Garrett, and Ray Giesel.

Accordingly, the following counts remain:

1) Against defendants Maricopa County and Phillip Keen: counts three (alteration of medical findings), six (conspiracy), and eight (derivative claims); and

2) Against defendants City of Phoenix and Ronald Jones: counts one (breach of investigation policies), two (mishandling of crime scene evidence and failure to report), three (alteration of medical findings), four (lack of probable cause), five (racial profiling), six (conspiracy), and eight (derivative claims).

DATED this 1st day of February, 2008.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge