ANDREW P. THOMAS
MARICOPA COUNTY ATTORNEY

By:   RANDALL R. GARCZYNSKI
      Deputy County Attorney
      State Bar No. 023223
      MCAO Firm No. 00032000
      ca-civilmailbox@mcao.maricopa.gov

CIVIL DIVISION
Security Center Building
222 North Central Avenue, Suite 1100
Phoenix, AZ  85004
Telephone (602) 506-8541

Attorney for Maricopa County and
  Philip and Lois Keen

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BYRON TENNEL LACY, an unmarried man, and DEBRA ANN FINLEY, his mother; BRAYVON T. LACY, minor child of Byron Tennel Lacy,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF MARICOPA, et. al.<br><br>Defendants. | NO. CV06-02865-PHX-FJM<br><br>**DEFENDANTS MARICOPA COUNTY AND PHILIP KEEN'S STATEMENT OF FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

Defendants Maricopa County, Philip Keen and Lois Keen by and through undersigned counsel, hereby set forth the following statement of facts in support of their Motion for Summary Judgment against the Plaintiff:

1.   Plaintiffs filed their First Amended Complaint on October 5, 2007. (*See*

1

1 Docket # 36).

2     2.      Per the Court's February 1, 2008 Order, the following counts remain against Defendants Maricopa County and Phillip Keen: counts three (alteration of autopsy findings), six (conspiracy), and eight (derivative claims). (*See* Docket # 64).

    3.      Dr. Philip Keen was the Medical Examiner for Maricopa County at the time of the alleged incident. (*See* Affidavit of Dr. Phillip Keen attached hereto as Exhibit A at ¶ 3).

    4.      Approximately one week before Plaintiff's criminal trial was to begin, the prosecutor, Ms. Teresa Sanders, contacted Dr. Keen and informed him that she had met with Plaintiff's defense counsel and he was maintaining it was impossible for a .45 caliber bullet to exit Mr. Shawn Mayon's skull through a 5/16" "defect" that Dr. Keen had noted in his autopsy report. (*See* Exhibit A at ¶ 11).

    5.      Prosecutor, Ms. Sanders also inquired if the 5/16" measurement could have been a mistake. She indicated that she had measured the "defect" in the unscaled autopsy photo and it appeared to be about 5/16" and the photo also appeared to be smaller than an actual skull size. (*See* Exhibit A at ¶ 12).

    6.      Dr. Keen informed Ms. Sanders that it was unusual, but not impossible, that a skull exit "defect" could measure smaller than the bullet diameter, especially in a case like Mr. Mayon where there are numerous small bone fractures near the "defect" (i.e. displaced bone) which could hinge outward and allow the bullet to pass through and then hinge back, held by skin and hair, leaving an exit wound appearing to be smaller than the bullet caliber. (*See* Exhibit A at ¶ 13).

7. Dr. Keen informed Ms. Sanders that is very unlikely a small caliber bullet (i.e. .22 - .25 caliber) could have passed through the thick skull bone at the place of the exit "defect" of Mr. Mayon. (*See* Exhibit A at ¶ 14).

8. After reviewing the unscaled autopsy photo, Dr. Keen concluded that the 5/16" measurement of the exit "defect" (i.e. displaced bone) was incorrect. (*See* Exhibit A at ¶ 15).

9. Dr. Keen hypothesized that Mr. Mayon's skull was *at least* one-third larger than the photograph and therefore the exit "defect" would have to be *at least* one third larger. He estimated the exit "defect" to be at least 7/16" – 8/16" or approximately ½". The "hinging" effect of the linear fracture and bone chips near the "defect" would have been made the true exit wound even larger. (*See* Exhibit A at ¶ 16).

10. Ms. Sanders informed Dr. Keen that the defense counsel for the Plaintiff, Byron Lacy, would be in contact with him to interview him about the change in measurement and the "hinging" theory, however, no representative of Plaintiff ever contacted Dr. Keen. (*See* Exhibit A at ¶ 18).

11. The timeliness of the disclosure has been raised, litigated, and appealed and nothing approaching a deprivation of a constitutional right was found. (*See* Memorandum Decision attached hereto as Exhibit B at pgs. 2-4).

12. At trial, Melvin Lee Garrett, Phoenix Criminalist testified as to bone fragments on the bullet which struck Mr. Pink Sr. (consistent with a "pass through" of Shawn Mayon's skull). (*See* testimony of Mr. Garrett attached hereto as Exhibit C at pg. 28, lines 21-23, pg. 33, lines 11-15, and diagram attached hereto as Exhibits D).

13. There was medical testimony by Jennifer Mihalovich that DNA and blood found on Mr. Pink, Sr. at the wound was caused by the bullet from Plaintiff's gun, was from Mr. Mayon (consistent with a "pass through" of Mr. Mayon's skull). (*See* testimony of Ms. Mihalovich attached hereto as Exhibit E at pg. 61, lines 2-9 and Exhibit D).

14. Plaintiff conceded in his Petition for Post-Conviction Relief that the disclosure had been made to his defense counsel prior to trial. (*See* Plaintiff's Petition for Post-Conviction Relief attached hereto as Exhibit F at pg. 7).

15. Plaintiff's Petition for Post-Conviction Relief asserts that his defense attorney "failed to interview the State's most important witness with regard to an issue that was the central focus of his planned defense, despite clear notice from the prosecution that he should do so." (*See* Exhibit F at pg. 5).

16. The Petition asserted that IF Plaintiff's defense counsel had spoken with Dr. Keen prior to trial, as he was invited to do so by the prosecutor, he could have obtained the assistance of another expert to attempt to determine the actual size of the "defect" of Shawn Mayon's skull based upon extrapolation from the available unscaled photograph, or he could have moved to exhume the body so that the defect itself could have been measured. (*See* Exhibit F at pg. 8).

17. Dr. Debra Komar, Forensic Anthropologist has concluded that the "defect" was 14mm, which would give an 11mm .45 caliber bullet room to pass, without any "hinging" to expand the exhit wound. (*See* Report by Dr. Debra Komar attached hereto as Exhibit G).

4

18. The autopsy report prepared by Dr. Keen did not mention the Plaintiff by name, did not affirmatively link Plaintiff's gun with the bullet that caused the death of Mr. Mayon, nor did it even opine on the caliber of bullet that passed through Mr. Mayon's skull. (*See* Autopsy Report attached hereto as Exhibit H and Exhibit A at ¶ 6).

19. Detective Jones from the Phoenix Police Department testified at the Grand Jury Proceeding that according to Dr. Keen's autopsy report that the cause of death of Shawn Mayon was a gunshot wound. (*See* Grand Jury Proceeding Transcript attached hereto as Exhibit I at pg. 12, lines 24-25, pg. 13, lines 1-2 and Exhibit A at ¶ 5).

20. Identification of the .45 caliber bullet that struck Calvin Pink, Sr. as having been from the Plaintiff's gun, the identification of bone fragments on that bullet, the DNA and blood of Shawn Mayon found on Calvin Pink, Sr. in the shoulder wound caused by the bullet from Plaintiff's gun and testimony of the Plaintiff being the one shooting seven to eight rounds in the direction of Shawn Mayon and Calvin Pink, Sr. at the time they were injured are matters that were provided by sources other than Dr. Keen to which the Grand Jury found probable cause. (*See* Exhibit I at pg. 15, lines 17-25, pg. 16, lines 1-25 and pg. 18, lines 13-18).

21. In Plaintiff's deposition, he testified that he has no factual knowledge of Dr. Keen conspiring with anybody to change his testimony. (*See* Plaintiff's deposition attached hereto as Exhibit J at pg. 101, lines 13-25 and pg. 102, lines 1-9).

22. Plaintiff testifies in his deposition that he has no factual basis to believe that Dr. Keen conspired with other individuals to convict black criminals, nor did Dr. Keen tell the jury that Plaintiff was a black gang member. (*See* Exhibit J at pg. 102,

1 lines 10-18, 23-25, pg. 103, lines 1-10, and pg. 104, lines 11-14, 16).

2     23.    Eye-witnesses saw an Afro-American discharge even to eight rounds

3 towards the victims from a white Volvo. (*See* Exhibit I at pg. 8, lines 16-25, pg. 9, lines

4 1-4, 12-15, pg. 10, lines 16-19).

5     24.    Police later stopped a white Volvo with four Afro-American passengers

6 (one of them the Plaintiff). (*See* Exhibit I at pg. 11, lines 7-14).

7     25.    The .45 caliber gun of Plaintiff was found in the car. (*See* Exhibit I at pg.

8 11, lines 16-24).

9     26.    After several false stories, Plaintiff admitted he fired seven or eight rounds

10 from the car. (*See* Exhibit I at pg. 18, lines 7-18).

11     RESPECTFULLY SUBMITTED this 24th day of JUNE, 2008.

12     ANDREW P. THOMAS
    MARICOPA COUNTY ATTORNEY

13

    BY: /s/ Randall R. Garczynski
14         RANDALL R. GARCZYNSKI
        Deputy County Attorney
15         Attorneys for Maricopa County and
        Philip and Lois Keen

16

17 ORIGINAL of the foregoing E-FILED and
   courtesy copies MAILED this 24th day of
18 JUNE, 2008, to:

19 Honorable Frederick J. Martone
   UNITED STATES DISTRICT COURT
20 401 West Washington Street, Suite 526, SPC 62
   Phoenix, Arizona  85003

21

22 . . .

1 | Richard T. Treon, Esq.
    TREON, AGUIRRE, NEWMAN & NORRIS
2 | 2700 North Central Avenue, Suite 1400
    Phoenix, Arizona 85004
3 | *Attorneys for Plaintiff*

4 | Kathleen L. Wieneke, Esq.
    JONES, SKELTON & HOCHULI, P.L.C.
5 | 2901 North Central Avenue, Suite 800
    Phoenix, Arizona 85012
6 | *Attorneys for City of Phoenix*

8 | /s/ Tyna M. Garcia
    RM 06-0263

9 | S:\COUNSEL\Civil\Matters\RM\2006\Lacy RM06-0263\Pleadings\MSJ\MSJ's SOF 062408.doc