1    Kathleen L. Wieneke, Bar #011139
     Lori L. Voepel, Bar #015342
2    Michele Molinario, Bar #020594
     JONES, SKELTON & HOCHULI, P.L.C.
3    2901 North Central Avenue, Suite 800
     Phoenix, Arizona  85012
4    Telephone:  (602) 263-1700
     Fax:  (602) 200-7858
5    kwieneke@jshfirm.com
     mmolinario@jshfirm.com
6
     Attorneys for Defendants City of Phoenix
7    and Ronald Jones

8
                    **UNITED STATES DISTRICT COURT**
9
                         **DISTRICT OF ARIZONA**
10

11   BYRON TENNYL LACY, an unmarried man,        NO. CV06-2865-PHX-FJM
     and DEBRA ANN FINLEY, his mother;
     BRAYVON T. LACY, minor child of Byron
12   Tennel Lacy,

13                                  Plaintiffs,

14          v.                                   **DEFENDANTS CITY OF PHOENIX
                                                 AND JONES' MOTION FOR
15   COUNTY OF MARICOPA; THE CITY OF             SUMMARY JUDGMENT ON
     PHOENIX; PHILLIP KEEN, M.D. and JANE        COUNTS I, II, IV, V, VI, VIII**
16   DOE KEEN, RONALD JONES and JANE
     DOE JONES; KENNY HANSEN and JANE
17   DOE HANSEN; LEE GARRETT and JANE            **(Oral Argument Requested)**
     DOE GARRETT JOHN DOE GIESEL and
18   JANE DOE GIESEL, et al.,

19                                  Defendants.

20
            Defendants City of Phoenix (City) and former-detective Ronald Jones (Detective
21
     Jones)(collectively "City Defendants") move for summary judgment on Plaintiffs'
22
     remaining claims against them, including those alleged under 42 U.S.C. §§ 1983 and
23
     1985, Plaintiffs' equal protection claim, and their punitive damages claim.  This Motion is
24
     supported by the attached Memorandum of Points and Authorities and Defendants'
25
     Statement of Facts and Exhibits.
26
     **I.      FACTUAL BACKGROUND**
27
            On May 1, 1994, there was a shooting in the parking lot of an after-hours nightclub
28
     1920223.2

1   in Phoenix, resulting in the death of Shawn Mayon.  (DSOF ¶¶ 1, 9).  Plaintiff Byron Lacy

2   admits he fired several shots from the backseat of the car in which he was riding. (DSOF

3   ¶¶ 2, 4).  Detective Jones was the case agent in charge of the investigation, which resulted

4   in Lacy's arrest, prosecution and ultimate conviction on reckless manslaughter and

5   aggravated assault charges. (DSOF ¶¶ 5, 55, 59).  Lacy's convictions were upheld on

6   direct appeal. (DSOF ¶¶ 60-61).

7       In state post conviction proceedings, Judge Arrellano set aside the convictions on

8   two grounds: 1) ineffective assistance of counsel and 2) no reasonable trier of fact could

9   have found Lacy guilty based on the evidence presented. (DSOF ¶¶ 63-64).  On February

10  27, 2003, Judge Reinstein dismissed the charges with prejudice, finding Lacy could not be

11  re-tried due to double jeopardy concerns. (DSOF ¶¶ 65).

12      Lacy sued the City Defendants and others for his arrest and subsequent conviction.

13  Several counts have already been dismissed.   The remaining counts against the City

14  Defendants are Counts One [§ 1983 -- breach of official policy (City)], Two [§ 1983 –

15  breach of duty (City)], Four [§ 1983 – lack of probable cause (City, Jones)], Five [equal

16  protection (City, Jones)], Six [§ 1985 – conspiracy (all Defendants)], Eight [§ 1983 –

17  denial of familial association (all Defendants)], and a punitive damages claim.  The City

18  Defendants are entitled to summary judgment on all remaining claims against them.

19  II.   **ARGUMENT**

20      A.   **Plaintiffs' § 1983 "Lack of Probable Cause" Claim Must Be Dismissed**
            **As A Matter Of Law (Count IV).**
21
22      Lacy claims Detective Jones persisted in his criminal investigation without

23  probable cause, resulting in a malicious prosecution in violation of his constitutional

24  rights. (First Amended Complaint ¶ 111-114).[1]  To prevail on this claim, Plaintiffs must

25  establish each element of common law malicious prosecution, *Cullison v. City of Peoria*,

26      [1]   Defendants are analyzing Count IV under a malicious prosecution theory both
    due to the allegations in Plaintiffs' Complaint and because this Court treated this Count as
27  essentially a malicious prosecution claim in finding it was not time-barred. (See 2/1/08
    Order at 5-8, Doc. No. 64). Defendants maintain, however, that a malicious prosecution
28  claim cannot properly form the basis for a § 1983 violation.

1920223.2                                2

1   120 Ariz. 165, 169, 584 P.2d 1156, 1160 (1978),[2] and show that the prosecution was

2   conducted with the intent to deprive Lacy of a constitutional right. *McCarthy v. Mayo*,

3   827 F.2d 1310, 1315 (9th Cir. 1987).  Summary judgment is proper on this claim because:

4   1) there was probable cause to arrest and charge Lacy; 2) the City did not make the

5   decision to prosecute Lacy; 3) Jones is immune from § 1983 liability based on his grand

6   jury testimony and investigatory actions; and 4) there is no evidence that a City policy or

7   custom was the "driving force" behind any alleged constitutional violation.[3]

8                    **1.      Probable Cause Supported Lacy's Arrest And Charges.**

9        In a malicious prosecution action, whether probable cause existed is a question of

10  law for the Court. *See Lucero v. Stewart,* 892 F.2d 52, 54 (9ᵗʰ Cir. 1989); *Bird v.*

11  *Rothman,*128 Ariz. 599, 602, 627 P.2d 1097,1100 (App. 1981). "Probable cause to effect

12  an arrest exists where the arresting officer has reasonably trustworthy information of facts

13  and circumstances which are sufficient to lead a reasonable man to believe an offense is

14  being or has been committed and that the person to be arrested is committing or did

15  commit it." *State v. Nelson*, 129 Ariz. 582, 585, 633 P.2d 391, 395 (1981).  Absence of

16  probable cause is an essential element of a malicious prosecution claim, *Cullison*, 120

17  Ariz. at 169, 584 P.2d at 1160 (1978), which Lacy cannot establish as a matter of law.

18  The grand jury indictment and Lacy's conviction together establish the existence of

19  probable cause.[4]

20

21

22      [2] Pursuant to *Cullison*, the elements of malicious prosecution are: 1) a criminal
prosecution, 2) that terminates in plaintiff's favor, 3) with defendants as prosecutors, 4)
23  actuated by malice, 5) without probable cause, 6) that causes damages.

        [3] Although the Complaint does not allege vicarious liability against the City in
24  Count IV, it generally alleges that the City is vicariously liable under § 1983 for actions
by its agents/employees who acted under color of law pursuant to an unconstitutional
25  policy, practice or procedure. (First Amended Complaint ¶ 19).  The City cannot be held
vicariously liable for the acts of its police officers under § 1983. *Monell v. Dep't of Soc.*
26  *Servs.,* 436 U.S. 658, 690-95 (1978).  The City's potential liability under *Monell* for an
official policy or custom is addressed below.

27      [4] The facts upon which the arrest and indictment were based also establish probable
28  cause as a matter of law.  (DSOF ¶¶ 1-59).

a.   **Lacy's Indictment Presumptively Established The Existence Of Probable Cause.**

A grand jury indictment creates a presumption that the arrest and indictment were procured with probable cause. *Bernard v. United States*, 25 F.3d 98, 104 (2d Cir. 1994); *see also Conrad v. United States,* 447 F.3d 760, 768 (9th Cir. 2006).   Thus, there is a presumption that the Grand Jury in Lacy's case acted upon sufficient and legal evidence. To rebut this presumption, a plaintiff must produce substantial evidence that the return of the indictment resulted from perjured testimony or that the grand jury proceedings were otherwise "significantly irregular." *Reinoehl v. Trinity Universal Ins. Co.*, 719 N.E.2d 1000, 1007 (Ohio App. 1998); *see also Conrad,* 447 F.3d at 768 (presumption rebutted only where plaintiff demonstrates indictment was procured on basis of false testimony).

First, there were no "significant irregularities" in the grand jury proceedings, as demonstrated by the criminal trial judge's denial of Lacy's Motion to Remand to the Grand Jury for New Finding of Probable Cause. (DSOF ¶ 57).   Second, as set forth more fully below, the Arizona Court of Appeals already considered and rejected Lacy's claim that Detective Jones presented perjured testimony to the Grand Jury. (DSOF ¶¶ 60-61). Plaintiffs have therefore failed to rebut the presumption that Lacy's indictment was supported by probable cause.

b.   **Lacy's Conviction And Submission Of The Case To The Jury Conclusively Established Probable Cause.**

Moreover, under long established Arizona law, conviction of a crime conclusively establishes probable cause even when it is subsequently reversed or set aside.   In *Wisniski v. Ong,* 94 Ariz. 123, 124, 382 P.2d 233, 234 (1963), the plaintiff had been tried and convicted in Phoenix City Court.   She appealed to Superior Court and, on a trial *de novo*, was found not guilty. *Id.*   Despite her exoneration, the original guilty verdict "establish[ed] as a matter of law the existence of probable cause for the prosecution." *Id.; see also Creamer v. Raffety,* 145 Ariz. 34, 40, 699 P.2d 908, 914 (App. 1984).[5]   This rule

---

[5] *Overruled on other grounds by Godbehere v. Phoenix Newspapers, Inc.,* 162 Ariz. 335, 783 P.2d 781 (1989).

has been codified in Restatement (Second) of Torts § 667 (1977):

> The conviction of the accused by a magistrate or trial court, although reversed by an appellate tribunal, conclusively establishes the existence of probable cause, unless the conviction was obtained by fraud, perjury or other corrupt means.

Additionally, just because Judge Arellano found in PCR proceedings that no reasonable juror could find Lacy guilty *beyond a reasonable doubt,* it does not mean there was insufficient evidence of probable cause or even insufficient evidence for the charges to go to the jury.   Lacy's criminal trial judge determined that there was *substantially* more than probable cause to believe Lacy was guilty of the offenses because he denied the defense motion for judgment of acquittal and submitted the case to the jury. (DSOF ¶ 58).   If the evidence was legally sufficient for submission to the jury, it was necessarily sufficient to constitute probable cause.   Lacy's submission of the case to the jury and subsequent conviction established the existence of probable cause.

### 2.   Lacy Is Collaterally Estopped From Asserting An Allegation Of Perjury In Order To Revive His Lack Of Probable Cause Claim.

The only way Lacy could even possibly revive his malicious prosecution claim is by showing that his prosecution or conviction was the product of perjury or other corrupt means.   But the record lacks any evidence of such conduct.   Lacy may nonetheless argue, as he did in state court, that Detective Jones presented perjured testimony to the Grand Jury.   The Arizona Court of Appeals already rejected that claim on the merits. (DSOF ¶¶ 60-61).   Lacy is therefore collaterally estopped from raising it here.

Collateral estoppel means that "once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue on a different cause of action between the same parties." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 467 n. 6 (1982).   The doctrine applies to state court judgments in federal court. *See Marrese v. Am. Acad. of Orthopedic Surgeons,* 470 U.S. 373, 379-80 (1985)(citing federal full faith and credit statute, 28 U.S.C. § 1738).   The collateral estoppel effect of a state court decision also bars the relitigation of the same issues in § 1983 actions in federal court. *Allen v. McCurry,* 449 U.S. 90, 104 (1980).

1920223.2

5

1

2

3        **3.     It Was Not The City Defendants' Decision To Continue
                Prosecuting Lacy.**

4        The City defendants are also entitled to summary judgment on Claim IV because

the decision to continue prosecuting is quintessentially a prosecutorial function that is and

5   was made by the prosecutor. *See Davis v. Zirkelbach*, 149 F.3d 614, 617 (7th Cir. 1998).

6   The United States Supreme Court has observed that malicious prosecution cases against

arresting police officers are anomalies because the principle player in the prosecution of

7   the charged individual is the prosecutor, not the arresting or investigating officers.

8   *Albright v. Oliver*, 510 U.S. 266, 279 n. 5 (1994), Ginsberg, J., concurring.  Even when

9   investigating officers play a significant role in the prosecution of a criminal defendant, an

10  investigator is not liable on a malicious prosecution claim when there is no proof that he

11  in any way misled, deceived, or otherwise concealed facts from the prosecutor. *Id.*; *Mut.*

12  *Med. Plans, Inc. v. County of Peoria*, 309 F.Supp.2d 1067, 1081 (C.D. Ill. 2004)(granting

13  summary judgment for officer even though he arguably withheld potentially exculpatory

14  evidence from the grand jury, as nothing suggested he concealed such information from

15  the state's attorney, who presented the case to the grand jury, requested the indictment and

16  presented the state's case at trial).

17        There is no evidence Detective Jones withheld any information from the prosecutor

18  in this case. The investigating officers disclosed the fruits of their investigation to the

19  prosecutor, and it was ultimately the prosecutor's decision to institute criminal

20  proceedings. There is no evidence that the City Defendants concealed facts from the

21  prosecutor or misled him in any way.  There is also no evidence that the prosecutor in this

22  case exercised anything other than his independent judgment to continue the prosecution.

23  The City Defendants are entitled to summary judgment on this ground alone.

24        **4.     Detective Jones Is Immune From § 1983 Liability.**

25            **a.     Jones Is Absolutely Immune From Claims Based On His
                    Grand Jury Testimony.**

26

27        Detective Jones is immune from § 1983 liability based on his Grand Jury

28  testimony.   Police officers are absolutely immune from claims based on in-court

1920223.2                                6

1   testimony. *Briscoe v. LaHue*, 460 U.S. 325, 345-46 (1983); *see also Little v. City of*

2   *Seattle,* 863 F.2d 681 (9th Cir. 1988)(Department of Labor investigator absolutely

3   immune for Grand Jury testimony).  There are sound policy considerations for this rule:

4   
5   
> Subjecting government officials, such as police officers, to damages liability under § 1983 for their testimony might undermine not only their contribution to the judicial process but also the effective performance of their other public duties. . . . Police officers testify in scores of cases every year, and defendants often will transform resentment at being convicted into allegations of perjury by the state's official witnesses.

6   
7   

8   *Briscoe,* 460 U.S. at 343.  Lacy has "transformed resentment at being convicted into

9   allegations of perjury."  *Id.*  But he has no evidence that his indictment or conviction was

10   actually procured by fraud, perjury, or other corrupt means.  In any event, the U.S.

11   Supreme Court has refused to "carve out an exception" to absolute immunity for perjured

12   testimony offered by police officer witnesses.  *Briscoe,* 460 U.S. at 341-42.  Detective

13   Jones is absolutely immune from any claim based on his Grand Jury testimony.

14                         **b.     Jones Has Qualified Immunity For Investigatory Actions.**

15           Even if Detective Jones were not absolutely immune for his Grand Jury testimony,

16   he would still be entitled to summary judgment because he has qualified immunity for his

17   investigatory decisions.  Qualified immunity is a lenient standard that protects "all but the

18   plainly incompetent or those who knowingly violate the law."  *Hunter v. Bryant*, 502 U.S.

19   224, 229 (1991) (per curiam).  The question is, based on the information known to

20   Detective Jones and the clearly established law, whether a reasonable officer could have

21   concluded that probable cause existed to arrest and indict Lacy on  January 25, 1995. *See*

22   *Saucier v. Katz*, 533 U.S. 194, 202 (2001).  An officer is entitled to immunity for mistaken

23   conduct, so long as the officer acted reasonably under the circumstances. *Id.* at 205;

24   *Hunter,* 502 U.S. at 227-29.

25           Even the most cursory review of the undisputed facts demonstrates the answer is

26   yes.  When the Grand Jury indicted Lacy after a six-month homicide investigation, an

27   abundance of evidence supporting probable cause existed. It included not only the

28   physical evidence but also Lacy's admission that he fired a .45 caliber weapon into the air

1   out the window of a vehicle towards Sister's nightclub and that it was possible he fired his

2   weapon continuously from a downward motion all the way to an upward motion and back

3   to the downward motion. (DSOF ¶¶ 4, 22-23).  A reasonable officer could have found this

4   evidence sufficiently trustworthy that it supported a belief by a reasonably prudent person

5   that Lacy had shot and killed Shawn Mayon and injured Calvin Pink, Sr.  Detective Jones

6   is clearly entitled to immunity.

7             **B.       Plaintiffs' § 1983 Claims Against The City Must Be Dismissed (Counts
           I, II, IV).**
8
               Plaintiffs' Complaint alleges in three Counts that the City can be held liable under
9
    § 1983: Count I (breach of official policy), Count II (breach of duty), and Count IV (lack
10
    of probable cause).   The City is entitled to summary judgment on all three counts because
11
    Plaintiffs both fail to show that a City policy or custom was the driving force behind any
12
    alleged constitutional violation and because Plaintiffs' allegations do not rise to the level
13
    of a constitutional violation.
14
                     **1.      Lacy Cannot Show An Official Policy Or Custom Was The
                             Driving Force Behind Any Alleged Constitutional Violation.**
15
16             As noted at the outset of this argument, the City cannot be held vicariously liable

17   for the acts of its police officers under § 1983, *Monell,* 436 U.S. at 690-95.  Liability can

18   attach only where the City *itself* has committed the alleged constitutional violation

19   through an unconstitutional policy or custom. *Id.* at 694; *see also City of Canton v. Harris*,

20   489 U.S. 378, 385 (1989).  Moreover, to succeed on a *Monell* claim, Lacy must prove that

21   such policy or custom was the direct "moving force" behind the asserted constitutional

22   violation. *Board of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

23             Plaintiffs first allege Lacy's civil rights were violated when Detective Jones

24   allegedly violated official Phoenix Police Department policies on evidence gathering,

25   impounding, inventorying, securing and recording of the evidence, including failing to

26   immediately seal the .45 caliber bullet. (First Amended Complaint, §§ 87-90, 92).  The

27   only official policy Plaintiffs allege is Phoenix Police Operational Order No. 8.1, which is

28   the Evidence Collection/Impound Procedures.

1920223.2                                          8

1    Operations Order 8.1 was not even in effect during Lacy's 1994 investigation and

2    arrest.   (DSOF ¶¶ 45-46).   It was not implemented by the City of Phoenix Police

3    Department until January 1999. (Id.).  Obviously then, this policy could not have been the

4    "driving force" behind any constitutional violation.  To clarify this is the policy Plaintiffs

5    are alleging as the basis for *Monell* liability, the City Defendants sent Non-Uniform

6    Interrogatories requesting that Plaintiffs identify with specificity the policy or custom

7    allegedly violated by the City Defendants.  In response, Plaintiffs merely referenced their

8    First Amended Complaint and Initial Disclosure Statement, which both only mention

9    Operations Order 8.1. (DSOF ¶ 73).  As a matter of law, Plaintiffs have failed to identify

10   any City policy or custom that was the "driving force" behind any constitutional violation.

11          Plaintiffs next allege, without pointing to any official policy, that the "informal

12   testing" of the.45 caliber ammunition prior to impounding and inventorying deprived

13   Lacy of his constitutional rights.  In fact, this testing complied with Phoenix Police Crime

14   Laboratory and Evidence policies in effect during the relevant time period. (DSOF ¶¶ 50,

15   54).  The City cannot be held liable under § 1983 for this testing because Lacy has failed

16   to show, or even allege, what official policy or custom in effect at the time of his

17   investigation was the driving force resulting in any alleged constitutional violation.

18                  **2.      Lacy's Allegations Do Not Rise To The Level Of A Constitutional
                            Deprivation.**

19
                Even if Plaintiffs could point to an official policy or custom that was the driving
20
     force behind Detective Jones' alleged actions, they cannot establish that those alleged
21
     actions rise to the level of a constitutional violation.  First, the failure of police to preserve
22
     potentially useful evidence does not constitute a deprivation of civil rights absent a
23
     showing that law enforcement acted in bad faith. *See Arizona v. Youngblood*, 488 U.S. 51,
24
     57-59 (1989)(investigating officer's failure to refrigerate victim's clothing and perform
25
     tests on semen samples in a sexual assault case did not violate constitutional rights where
26
     there was no suggestion of bad faith and the information was not concealed from the
27
     defendant at trial.).  Plaintiffs have come forward with no evidence of bad faith -- only a
28

1   series of allegations that Detective Jones was negligent in handling evidence.  But a

2   negligent failure to preserve physical evidence does not violate due process. *See Daniels*

3   *v. Williams*, 474 U.S. 327, 332-33 (1986)(due process is not implicated by negligent acts

4   of officials).  Moreover, as noted above, Lacy's allegations of perjury and withholding of

5   exculpatory evidence were already decided adversely to him in his original appeal.  That

6   determination by the Arizona Court of Appeals is entitled to preclusive effect in this case.

7   *See Allen v. McCurry*, 449 U.S. 90, 95 (1980).

8       Second, even if an arrest violates police department procedures, it does not make it

9   more or less likely that the arrest implicates the Fourth Amendment, making evidence of

10  the violation irrelevant. *Tanberg v. Sholtis,* 401 F.3d 1151, 1163-94 (10ᵗʰ Cir. 2005).

11  Additionally, because probable cause existed as a matter of law for Lacy's arrest,

12  Plaintiffs cannot show any Fourth Amendment violation on that ground.  *See Morfin v.*

13  *City of East Chicago*, 349 F.3d 989, 997 (7th Cir. 2003).

14      Absent a constitutional violation, there can be no *Monell* entity liability.

15  *Quintanilla v. City of Downey*, 84 F.3d 353, 355-56 (9th Cir. 1996); *City of Los Angeles v.*

16  *Heller*, 475 U.S. 796, 799 (1986)(per curiam).  The City is entitled to summary judgment

17  on all of Plaintiffs' § 1983 claims (Counts I, II and IV).

18      **C.      Plaintiffs' Equal Protection Claim Must Be Dismissed For Failure To
        Present An Issue Of Fact On Racial Motivation (Count V).**

19

20      Lacy's equal protection claim against the City Defendants is based on the following

    reasoning: 1) in 1994, the City implemented an anti-gang violence program targeting

21
    Cripts and Bloods; 2) the primary members of those gangs are African-American; 3) Lacy

22
    is African-American; 4) thus, Lacy was racially profiled.  There is no actual evidence to

23
    support this theory, let alone sufficient evidence to permit a reasonable trier of fact to find

24
    the City Defendants "acted in a discriminatory manner and that the discrimination was

25
    intentional." *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 948  (9th Cir. 2003).

26
        The mere existence of an anti-gang violence program is not enough to show that

27
    law enforcement action against Lacy was racially motivated.  *See id.* (no inference of

28

1    racial discrimination where African American pulled over by Caucasian officer and

2    parties disagree regarding reasonableness of stop).  Even if gang affiliation were somehow

3    used here as a proxy for race, there is no evidence that any purported gang affiliation of

4    Lacy's factored into Detective Jones' investigation or was presented to the Grand Jury.

5    Nor is there any evidence that Lacy's arrest was part of an anti-gang violence program by

6    the City.  And if it were, targeting violent street gangs for investigation is a "neutral,

7    nonracial law enforcement decision" even if it incidentally results in greater arrests of

8    African-Americans. *U.S. v. Turner*, 104 F.3d 1180, 1185 (9th Cir. 1997). Consequences

9    resulting from the investigation of violent street gangs does not amount to evidence of

10   discriminatory intent. *Id.*; *see also U.S. v. Bourgeois*, 964 F.2d 935, 941 (9th Cir.

11   1992)(rejecting the argument that a two-day gang sweep could not have been race-neutral

12   because it primarily resulted in the arrest of African-American males).

13          Plaintiffs allege that in early 1994, the Phoenix Police Department implemented an

14   aggressive gang enforcement policy through which its "gang enforcement" unit would

15   intensify efforts to "crack down" on "street gang" violence by focusing on members of the

16   "Crips" and "Bloods," who were predominately African American. (First Amended

17   Complaint ¶ 116).  As *Turner* and *Bourgeois* demonstrate, the existence of an anti-gang

18   program alone is insufficient as a matter of law to show discriminatory intent.

19          Further, the uncontroverted evidence reveals that Detective Jones' investigation of

20   Lacy was not motivated by gang affiliation.  (DSOF ¶ 71).  Detective Jones did not testify,

21   nor was any other evidence presented to the Grand Jury, regarding Lacy's purported gang

22   affiliation.  (DSOF ¶ 72).  Jones instead focused on the evidence developed in his

23   impartial investigation supporting probable cause for Lacy's arrest.  These included

24   Lacy's admission to Jones that: 1) he fired a .45 caliber weapon into the air out the

25   window of a vehicle towards Sister's nightclub and that 2) it was possible he fired his

26   weapon continuously from a downward motion all the way to an upward motion and back

27   to the downward motion. (DSOF ¶¶ 4, 22-23).

28          There is no issue of fact that Lacy's arrest or prosecution was racially motivated.

1920223.2                                       11

1    The City Defendants are therefore also entitled to summary judgment on Count V.

2          **D.      The City Defendants Are Entitled To Judgment As A Matter Of Law On Plaintiffs' § 1985 Conspiracy Claim (Count VI).**

3

4          To succeed on a 42 U.S.C. § 1985(3) claim, a plaintiff must allege and prove four

5    elements: 1) a conspiracy; 2) for the purpose of depriving a person, either directly or

6    indirectly, of the equal protection of the laws, or of equal privileges and immunities under

7    the laws; 3) an act in furtherance of this conspiracy; and 4) personal injury, property

8    injury or a deprivation of any right or privilege of a citizen of the United States. *Sever v.*

9    *Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992)(quoting *United Brotherhood of*

10   *Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 828-29 (1983)).   Additionally, a

11   plaintiff must prove that the defendants' conduct was motivated by racial or some other

12   class-based discriminatory animus. *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971);

13   *Trerice v. Pedersen*, 769 F.2d 1398, 1402 (9th Cir. 1985)(affirming dismissal of

14   complaint, which failed to allege the requisite animus and did not contain any factual

15   allegations from which a class-based animus could be inferred).   To survive summary

16   judgment, Plaintiffs must point to some evidence that is "probative" of a conspiracy.

17   *Hewitt v. Grabicki*, 596 F.Supp. 297, 305 (E.D. Wash. 1984)(citing *Ward v. E.E.O.C.*, 719

18   F.2d 311, 314 (9th Cir. 1983)).

19          First, if this Court dismisses Plaintiffs' equal protection claims on the ground that

20   there was no evidence of racial motivation, it follows that Plaintiffs' conspiracy claim also

21   fails as a matter of law because there is no evidence that the City Defendants' conduct was

22   motivated by racial discriminatory animus. *Griffin*, 403 U.S. at 102.

23          Second, independent grounds exist to dismiss Plaintiffs' conspiracy claim because

24   they cannot prove any act in furtherance of a conspiracy; that is, there is no evidence of a

25   "meeting of the minds" between the City and any co-defendant (or anyone for that

26   matter). *See Caldeira v. County of Kauai*, 866 F.2d 1175, 1181-82 (9th Cir.

27   1989)(plaintiff's § 1985(3) claim dismissed on summary judgment where plaintiff could

28   not show an agreement or "meeting of the minds" by defendants to violate his

1920223.2                                        12

constitutional rights and did not allege a racial or class-based discriminatory animus); *see also Ting v. United States*, 927 F.2d 1504, 1512-13 (9th Cir. 1991)(evidence of post-incident "meeting" between agents coupled with agents' failure to explain injuries to plaintiff and their false statements regarding facts surrounding the shooting did not amount to sufficient evidence of conspiracy to distort facts surrounding shooting, even though fact existed regarding circumstances of shooting).

Third, "it is incumbent upon [Plaintiffs] to state *specific facts showing with some degree of particularity* that the named defendants' participation or overt acts in the alleged conspiracy were the proximate or legal cause of his injury; mere causation in fact is insufficient." *Hewitt*, 596 F.Supp at 304 (citing *Arnold v. International Business Machines Corp.*, 637 F.2d 1350 (9th Cir. 1981) (emphasis added). Mere allegations of a conspiracy are insufficient to defeat an adequately supported motion for summary judgment. *Fonda v. Gray,* 707 F.2d 435, 438 (9th Cir. 1983). Count VI generally alleges that the remaining individual Defendants, Detective Jones and Dr. Keen, joined in an illegal conspiracy and that the City is "vicariously liable under 42 U.S.C. § 1985…" (First Amended Complaint ¶¶ 127-130). No particularized evidence supports Plaintiffs' allegations that a conspiracy existed between these Defendants to manipulate or tamper with evidence (id. at ¶ 127), as it is undisputed that Defendants complied with the City's policy regarding "informal analysis" and handled all evidence properly. Nor is there evidence to support Plaintiffs' contention that the City Defendants conspired with the State to obtain a conviction or that Detective Jones tampered with evidence. (Id. at ¶ 128; DSOF ¶¶ 54, 70). Finally, no evidence supports Plaintiffs' claim that a conspiracy existed between Dr. Keen and the City. (DSOF ¶¶ 66-69; see also Defendant Maricopa County's Statement of Facts ¶ 21). There is absolutely no evidence that any City of Phoenix officer provided any information to Dr. Keen that led to any alleged false reports. (First Amended Complaint at ¶ 129; see also Maricopa County's Statement of Facts ¶¶ 21-22). Thus, Plaintiffs' conspiracy claim against Detective Jones fails as a matter of law.

Moreover, for the same reasons that the City cannot be held vicariously liable for

1    the acts of its police officers under § 1983, *Monell,* 436 U.S. at 690-95, it cannot be held

2    vicariously liable for claims under § 1985. *See, e.g., Vasquez v. City of Reno,* 461 F.Supp.

3    1098 (D.Nev. 1978). Summary judgment must therefore also be entered for the City.

4    **E.    Plaintiffs Deprivation Of Familial Relationship Claim Fails As A Matter Of Law (Count VIII).**

5

6    **1.    There Is No Evidence That Plaintiffs' Deprivation Of Familial Relationship Resulted From An Official Governmental Policy.**

7    Count VIII alleges a denial of familial association claim.  As a matter of law,

8    liability for deprivation of familial relationship must result from the "execution or

9    implementation of an official governmental policy." *Kelson v. City of Springfield*, 767

10   F.2d 651, 656 (9th Cir. 1985)(citing *Monell*, 436 U.S. at 690).  Thus, Plaintiffs must prove

11   that the "deprivation of their liberty interest resulted from the execution of an official

12   policy, custom, or practice." *Id.*  As set forth in Argument B above, there is no evidence

13   that any official policy, custom or practice of the City Defendants deprived Plaintiffs of a

14   liberty interest.  The only policy even mentioned by Plaintiffs was not in effect at the time

15   of Lacy's investigation and arrest, and even if it had been, violations of such policies do

16   not give rise to constitutional deprivations. *See Tanberg*, 401 F.3d at 1163-64.

17   **2.    The City Defendants Did Not Possess The Requisite Mental State In Allegedly Interfering With Plaintiffs' Familial Relationship.**

18

19   Alternatively, summary judgment is proper because Plaintiffs cannot prove the

20   City Defendants intended to interfere with their relationship with their son.  Courts that

21   have considered the issue of whether to allow parents to recover for loss of relationship

22   with their child have expressly declined to find a violation of the familial liberty interest

23   where the state action was not aimed specifically at interfering with the relationship. *See,*

24   *e.g., Russ v. Watts*, 414 F.3d 783, 787 (7th Cir. 2005)(parents of adult son fatally shot by

25   law enforcement officer had no constitutional right under due process clause to recover

26   for loss of society and companionship of son, absent state action directed at interfering

27   with parent-child relationship), *overruling Bell v. City of Milwaukee*, 746 F.2d 1205 (7th

28   Cir. 1984)(case in which court held that parent's constitutional liberty interest in his

1920223.2                                    14

1    relationship with his adult son was violated when police killed his son); *Trujillo v. Bd. of*

2    *County Comm'rs.*, 768 F.2d 1186, 1190 (10th Cir. 1985)(plaintiffs' § 1983 action for the

3    wrongful death of their son and brother while he was in state custody is properly

4    dismissed because plaintiffs did not allege that defendant intended to deprive them of their

5    protected relationship with the decedent).  The Seventh Circuit recently stated that "[t]he

6    Supreme Court has recognized violations of the due process liberty interest in the parent-

7    child relationship only where the state took action *specifically aimed at interfering with*

8    *that relationship*." *Russ*, 414 F.3d at 788-89 (emphasis added).

9        Although the Ninth Circuit has rejected *Trujuillo's* intent requirement, *see Smith v.*

10   *City of Fontana*, 818 F.2d 1411 (9th Cir. 1987),[6] it relied on the Seventh Circuit's opinion

11   in *Bell* in holding that no specific intent state of mind is required. 818 F.2d at 1420 n.12.

12   As indicated above, *Bell* was recently overruled by the Seventh Circuit in *Russ,* calling

13   into question the holding in *Smith*.  Additionally, since *Smith* was decided, other courts

14   have indicated that some level of intent is required to prevail on a familial relationship

15   claim. *See Valdivieso Ortiz v. Burgos*, 807 F.2d 6, 8-9 (1st Cir. 1986)(no recovery for an

16   "incidental deprivation" of a familial relationship); *McCurdy v. Dodd*, 352 F.3d 820, 829

17   (3rd Cir. 2003)(no due process violation when the official actions were not "deliberately

18   directed" towards harming the relationship); *Hodge v. Jones*, 31 F.3d 157, 164-65 (4th

19   Cir. 1994)(no deprivation of familial association where plaintiffs failed to demonstrate

20   defendants' actions were "designed to have ... a significant impact" and the familial

21   relationship); *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 585 (8th Cir.

22   2006)(plaintiff's familial association rights not deprived as a result of her incarceration

23   where plaintiff failed to show an intent to interfere with that relationship); *Harbury v.*

24   *Deutch*, 233 F.3d 596, 606 (D.C. Cir. 2000)(no constitutional right to familial association

25   where government "indirectly interfered" with spousal relationship).[7]

26   _____

27   [6] *Overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th
Cir. 1999).

28   [7] *Reversed on other grounds by Christopher v. Harbury*, 536 U.S. 403 (2002).

The Ninth Circuit now stands alone in its rule that plaintiffs are not required to show some level of intent in association with a claim for deprivation of familial relationships, and the case it relied on has since been overruled. Moreover, even *Smith* acknowledges that something more than negligence is required to establish a due process violation sufficient to support a familial association claim. *Smith*, 818 F.2d 1418 n.9 (stating that *Daniels v. Williams*, 474 U.S. 327, 328 (1986), overrules *Kelson's* implicit holding that mere negligence can sustain a claim for deprivation of familial association); *see also Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004)(quoting *Smith* for the proposition that "the Due Process Clause is simply not implicated by a *negligent* act of an official …") (emphasis in Smith)). Accordingly, summary judgment is also proper on Count VIII because no evidence suggests the City Defendants' alleged interference was intentional or beyond simple negligence.

### F.   Plaintiffs Fail To State a Federal Claim For Punitive Damages.

Federal law precludes Plaintiffs from obtaining punitive damages against a municipality. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981); *Lancaster Comm. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 404 (9th Cir. 1991). Thus to the extent Plaintiffs seek punitive damages against the City, their claim must be dismissed.

Additionally, Detective Jones is entitled to summary judgment in his individual capacity. There is absolutely no evidence that Jones' individual conduct was motivated by any "evil motive or intent, or ... reckless or callous indifference to [Plaintiffs'] federally protected rights." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Any punitive damage claim against Detective Jones in his individual capacity must also be dismissed.

### III.   CONCLUSION

For the foregoing reasons and those set forth in Defendants' Statement of Facts, the City Defendants respectfully request summary judgment in their favor on Counts One, Two, Four, Five, Six and Eight.

1920223.2                                        16

1

2

RESPECTFULLY SUBMITTED this 24th day of June 2008.

JONES, SKELTON & HOCHULI, P.L.C.

3

4

5

By /s/ Lori L. Voepel
        Kathleen L. Wieneke
        Lori L. Voepel
        Michele Molinario
        2901 North Central Avenue, Suite 800
        Phoenix, Arizona  85012
        *Attorneys for Defendants City of Phoenix
        and Ronald Jones*

6

7

8

9

10

**CERTIFICATE OF SERVICE**

11

12

⊠       I hereby certify that on June 24, 2008, I electronically transmitted the attached

13

document to the Clerk's Office using CM/ECF System for filing and transmittal of

14

a Notice of Electronic Filing to the following CM/ECF registrants:

15

16

17

The Hon. Frederick J. Martone
Judge, United States District Court
401 West Washington
Phoenix, Arizona  85003

18

19

20

Richard T. Treon, Esq.
TREON, AGUIRRE & NEWMAN
2700 North Central Avenue, Suite 1400
Phoenix, Arizona 85004-1133
*Attorneys for Plaintiffs*

21

22

23

Randall R. Garczynski
Deputy County Attorney
Maricopa County Civil Division
 222 North Central Avenue, Suite 100
Phoenix, Arizona  85004-2206
*Attorneys for Defendants Maricopa County and Keen*

24

25

 /s Erin E. Byrnes

26

27

28

1920223.2                                        17