Kathleen L. Wieneke, Bar #011139
Erin E. Byrnes, Bar #021015
Michele Molinario, Bar #020594
JONES, SKELTON & HOCHULI, P.L.C.
2901 North Central Avenue, Suite 800
Phoenix, Arizona 85012
Telephone: (602) 263-1700
Fax: (602) 200-7858
kwieneke@jshfirm.com
mmolinario@jshfirm.com

*Attorneys for Defendants City of Phoenix and Ronald Jones*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| BYRON TENNYL LACY, an unmarried man, and DEBRA ANN FINLEY, his mother; BRAYVON T. LACY, minor child of Byron Tennel Lacy,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>COUNTY OF MARICOPA; THE CITY OF PHOENIX; PHILLIP KEEN, M.D. and JANE DOE KEEN, RONALD JONES and JANE DOE JONES; KENNY HANSEN and JANE DOE HANSEN; LEE GARRETT and JANE DOE GARRETT JOHN DOE GIESEL and JANE DOE GIESEL, et al.,<br><br>　　　　　　　　　　Defendants. | NO. CV06-2865-PHX-FJM<br><br>**DEFENDANTS CITY OF PHOENIX AND JONES' REPLY MEMORANDUM IN SUPPORT OF CITY OF PHOENIX AND DETECTIVE JONES' MOTION FOR SUMMARY JUDGMENT ON COUNTS I, II, IV, V, VI, VIII**<br><br>**(Oral Argument Requested)** |

　　　　Defendants City of Phoenix and Detective Ronald Jones are entitled to summary judgment on Plaintiffs' remaining claims,[1] as Plaintiffs have not put forth any admissible evidence demonstrating that Detective Jones' conduct in this case amounted to fraud, perjury or other corruption that overcomes the presumption that his indictment and conviction conclusively establish probable cause barring any claims stemming from his alleged malicious prosecution. In any event, the claims against Detective Jones are barred

---

[1] Plaintiffs dropped Counts 5 and 6 against the City Defendants. (Doc. #151 at 12-13

1951714.1
8/22/08

by absolute and qualified immunity. Additionally, Detective Jones never had authority, nor was it delegated to him, to set policy for the City of Phoenix, so the City is entitled to summary judgment as well.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I. THERE IS NO EVIDENCE DEMONSTRATING THAT LACY'S ARREST, INDICTMENT OR CONVICTION RESULTED FROM FRAUD, PERJURY OR OTHER CORRUPT MEANS.**

### A. Detective Jones' interview of Lacy did not overcome his free will.

Plaintiffs suggest that Detective Jones' interrogation of Lacy resulted in a coerced confession, in violation of the Fourth Amendment.[2] (Doc. # 151 at 9). A coercive interrogation is one in which, viewed under the totality of the circumstances, the officers' tactics undermined the suspect's ability to exercise free will. *Haynes v. Washington*, 373 U.S. 503, 513 (1963). As proof of the coercive interrogation, Plaintiffs submitted a copy of the transcript from the interview. (Doc. #160, Exhibit G). The transcript, however, falls far short of establishing a Fourth Amendment violation.

During the interview, Detective Jones admonishes Lacy to tell the truth and advises him that the police have information suggesting Lacy shot Mayon and Pink, Sr. Jones tells Lacy that there are witnesses who saw him shoot out the window of the white Volvo,[3] that he wants Lacy to tell the truth, and continues to question Lacy, even after he claims he only shot up in the air. (Defendants' Supplemental Statement of Facts, "DSSOF," at ¶¶ 74, 78-79). Jones also tells Lacy that there is a difference between deliberate and accidental conduct, arguably implying that a jury might view the accidental shooting of Mayon and Pink more charitably. (DSSOF at ¶ 81). Plaintiffs imply that this portion indicates Detective Jones' implied threats and verbal intimidation of Lacy. (Doc. # 151 at 3). Towards the end of the interview, Jones brings a .45 caliber bullet into the

---

[2] This is the first time Plaintiffs make this argument. No such allegations were made in the Amended Complaint, disclosure statements, or in any discovery response.

[3] Lacy claims that Jones misled him by telling him that witnesses at the scene saw *Lacy's arm* come out of the passenger side window and shoot towards Sisters, and suggests this was a lie. (Doc. #151 at 3). Danny King told investigators that the person whose arm he saw come out of the passenger side window had a white shirt on, and was black. Lacy is African-American, and was wearing a white shirt the night of the shooting.

interview room, and tells Lacy that it is the bullet that hit Pink in the shoulder. (DSSOF at ¶ 84).

None of the above rises to the level of a constitutional violation invalidating Lacy's ultimate admission that he may have shot his gun as he reached his arm out the window, on the way up to shoot into the air, and/or on the way back down. First, the fact that Jones continued to question Lacy after he denied shooting at all, and then denied shooting anywhere other than straight up in the air, was entirely permissible. *Amaya-Ruiz v. Stewart*, 121 F.3d 486, 494 (9th Cir. 1997) ("continuing to question a suspect after the suspect claims he is innocent does not constitute coercion and is often necessary to achieve the truth"). Indeed, Lacy had already lied to Detective Jones about where he was sitting in the white Volvo when the group of four left Sisters. (DSSOF at ¶ 76). Lacy also lied about whether he shot the gun at all. (DSSOF at ¶ 77). Detective Jones reasonably believed Lacy might also lie regarding the manner in which he fired the gun.

Additionally, any remarks that Jones made that suggested Lacy's cooperation—by telling the truth—may result in a more lenient sentence does not amount to intimidation or threats constituting coercion. *U.S. v. Leon Guerro*, 847 F.2d 1363, 1366 (9th Cir. 1988) (holding that an interrogator's promise to recommend leniency does not render a suspect's confession involuntary); *see also Cunningham v. City of Wenatchee*, 345 F.3d 802, 810 (9th Cir. 2003) (citation omitted). Even if the Court believes that Jones deceived Lacy regarding the evidence the police had, this is insufficient to vitiate the legality of the interview or the information gleaned therein. *U.S. v. Crawford*, 372 F.3d 1048 (9th Cir. 2004) (holding that trickery and deceit do not render a confession inadmissible).

Plaintiffs have not provided the Court with any evidence suggesting, let alone establishing, that Detective Jones engaged in any particular conduct during his interrogation of Lacy that would prove coercion. Without such information, Lacy's admissions that he shot "out the window" and that he may have shot when he put his arm out the window while raising the gun towards the sky, and/or on the way back down and as he pulled the gun back into the car, were appropriately shared with the Grand Jury and

were fully admissible at his trial.[4] The interrogation was lawful and cannot form the basis for any of Plaintiffs' constitutional claims.

### B. Detective Jones is not liable, as a matter of law, under a deliberate falsification of evidence theory.

Any claim that Detective Jones can be held liable under § 1983 for deliberately falsifying evidence against Lacy likewise fails as a matter of law. In order to prove such a claim, Plaintiffs must show either (1) that Detective Jones continued his investigation of Lacy in spite of the fact that he knew, or should have known, that Lacy was innocent *or* (2) Detective Jones' interview techniques were so coercive and abusive that he knew, or should have known, that those techniques would yield false information. *Devereaux v. Abbey*, 263 F.3d 1070, 1074-78 (9th Cir. 2001) (en banc); *see also Gausvik v. Perez*, 345 F.3d 813, 817 (9th Cir. 2003). Because Detective Jones' interrogation of Lacy did not strip him of his free will, Lacy's resulting statements were not obtained in violation of his Fourth or Fifth Amendment rights. Further, there is no evidence from which a jury could conclude that Detective Jones knew that his interview techniques were likely to yield false information, as all techniques employed by Jones were lawful. (*See* Section I.(a), *supra*).

Additionally, Plaintiffs have not put forth any evidence to demonstrate that Detective Jones continued investigating Lacy, despite knowing he was innocent. To the contrary, ample evidence supported Detective Jones' probable cause to believe that Lacy had committed a crime, even if it was not shooting Shawn Mayon, and therefore his continued investigation was proper.[5] (*See* DSOF ¶¶ 1-9, 11-12, 15-18, 21-23, 25-28 and Exhibits 2, 4; *see also* DSSOF at ¶¶ 76-78, 82-83 and Exhibit 26). Based on the facts known to Detective Jones at the time of his investigation, he had a legitimate belief that Lacy was not innocent of any and all crimes and therefore Jones' ongoing investigation was lawful. Plaintiffs' deliberate falsification of evidence claim fails.

---

[4] Lacy also admitted in his sworn deposition testimony on March 25, 2008 this description accurately reflected how he shot on the night of Mayon's death. (DSOF at ¶ 23).

[5] Even Plaintiffs' own expert, Galan Warren, concedes that Lacy's bullet caused the injury to Pink, Sr., and therefore Plaintiffs concede there was probable cause to believe that Lacy committed a crime against Pink (aggravated assault).

1951714.1
8/22/08

4

**C. Detective Jones did not have a constitutional duty to collect, preserve, and/or testify regarding any potentially exculpatory evidence before the Grand Jury.**

Plaintiffs claim that Detective Jones' conduct violated Lacy's Fifth, Sixth,[6] and Fourteenth Amendment rights.[7] (*See* Doc. #36, at ¶ 91). The basis for Plaintiffs' claim is that the City Defendants violated Phoenix Police Department policy regarding collecting, impounding, inventorying, securing and recording evidence.[8] (*Id.* at ¶ 87). And, by failing to properly handle the .45 caliber bullet and submitting it to "informal testing", Defendants allegedly destroyed "potentially exculpatory evidence"—i.e. biological trace evidence— that may have been found on the bullet (*Id.* at ¶¶ 87-91, 100). Additionally, Plaintiffs claim that Jones violated *Brady v. Maryland*, 373 U.S. 83 (1964) by failing to disclose "exculpatory facts" prior to trail, and failing to testify honestly and competently. (*Id.* at ¶ 101).

First, a police officer's only duty under *Brady* is to provide exculpatory evidence to the prosecutor. *See Walker v. City of New York*, 974 F.2d 293, 298-99 (2d Cir. 1992). And here, the evidence demonstrates that the prosecutor was aware of the informal testing, the submission of samples and other evidence to Forensic Science, and the results. There is no duty of *an officer* to disclose such exculpatory evidence to the Grand Jury. In any event, Plaintiffs point to no piece of exculpatory evidence that Jones suppressed, or what exculpatory facts, if any, Jones failed to disclose. In fact, Plaintiffs admit in their Amended Complaint that the prosecutor and jury knew about the information regarding

---

[6] Plaintiffs claim that Detective Jones violated the Confrontation Clause of the Sixth Amendment by using coercive interrogation techniques, leading Lacy to recall misinformation. Defendants have already substantively addressed Plaintiffs' claims that Jones' interview techniques were coercive, and incorporate those arguments here. There is no evidence presented that proves Plaintiffs' Sixth Amendment claim. *See Gausvik v. Perez*, 345 F.3d 813, 817 (9th Cir. 2003) (citation omitted) ("Suggestive interview tactics alone do not amount to a constitutional violation.").

[7] As a general matter, there is a presumption of prosecutorial independence regarding the decision to file a criminal complaint. *See Awadby v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004).

[8] Defendants previously explained to the Court that the policies Plaintiffs point to were not in existence at the time of the Mayon/Pink shootings.

the destruction of evidence. (*Id.* at ¶ 103.) Accordingly, there is no basis for Plaintiffs' claim that Detective Jones violated Lacy's constitutional rights.

Likewise, Plaintiffs claim that Jones' actions constitute "bad faith" are also unsupported by the record. In order to prevail on this claim, Plaintiffs must prove the destroyed evidence was material, as set forth in *California v. Trombetta*, 467 U.S. 479 (1984) *and* that Jones acted in "bad faith." Evidence is constitutionally material if it (1) "possess[es] exculpatory value that was apparent before the evidence was destroyed" and (2) the evidence is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Miller v. Vasquez*, 868 F.2d 1116, 1119 (9th Cir. 1989) (quoting *Trombetta*, 467 U.S. at 489). The constitutional materiality test set forth in *Trombetta* is not satisfied if evidence is only possibly exculpatory. *Arizona v. Youngblood*, 488 U.S. 51, 56 (1988). Moreover, the "presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence *at the time* it is lost or destroyed." *Id.* at 56 n.1 (emphasis added).

Here, Plaintiffs admit that the biological evidence that may have been recovered from the bullet, is at best, **possibly exculpatory**. (Doc. #36 at ¶¶ 91, 102). This alone requires judgment in Defendants' favor on this claim. Further, Plaintiffs have not come forward with any evidence that had Detective Jones handled the evidence differently that there would have been sufficient remaining evidence such that Lacy could have submitted it for independent testing. Nor is there any evidence that had such biological evidence been available, that its testing would have rendered exculpatory results. Plaintiffs have put forth nothing more than mere speculation that had such evidence existed, it would have been exculpatory. This is insufficient to sustain their claim.

Finally, there is simply no evidence Detective Jones acted in bad faith. Such a finding must be supported by specific evidence. *Miller*, 868 F.2d at 1120 (bad faith will usually be demonstrated where "the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant"); *see also Cunningham*, 345

F.3d at 812 (plaintiff must sustain a bad faith claim by "put[ting] forward specific, nonconclusory factual allegations that establish an improper motive"). Additionally, bad faith only exists where a plaintiff proves there is a "conscious effort to suppress exculpatory evidence." *Trombetta*, 467 U.S. at 488. Here, the record contains no evidence that demonstrates that Detective Jones knew the evidence he submitted to the lab for testing was exculpatory, let alone that he submitted it to the lab with the goal of destroying or losing it. There is simply nothing in the record from which a reasonable juror could conclude that Detective Jones made a "conscious effort to suppress exculpatory evidence." Accordingly, Plaintiffs cannot prove their claim that Detective Jones acted in bad faith and these claims fails as a matter of law.

## II. PLAINTIFFS ARE COLLATERALLY ESTOPPED FROM ARGUING THE CONVICTION RESULTED FROM FRAUD, PERJURY, OR OTHER CORRUPT MEANS.

In response to the City Defendants' Motion for Summary Judgment, Plaintiffs claim that their "lack of probable cause" claim is not barred by Lacy's arrest, indictment, or conviction because the conviction was the result of fraud, perjury, or other corruption.[9] Collateral estoppel bars this claim.

Collateral estoppel bars relitigation of issues that were resolved in a prior proceeding, even if the later suit involves a different cause of action. *Greater Los Angeles Counsel on Deafness, Inc. v. Baldridge*, 827 F.2d 1353, 1360 (9th Cir. 1987). The doctrine applies to state court judgments and decisions in federal court. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). The collateral estoppel effect of a state court decision also bars the relitigation of the same issues in § 1983 actions in federal court. *Allen v. McCurry*, 449 U.S. 90, 104 (1980). In analyzing a question of issue preclusion, federal courts look to state law to see whether issue preclusion applies. *See Haring v. Prosise*, 462 U.S. 306, 314 (1983).

Pursuant to Arizona's Rules of Criminal Procedure, Lacy filed a Rule 12.9 motion

---

[9] Defendants are not readdressing their argument regarding why the Court of Appeals' decision in the underlying criminal matter bars this claim, though Defendants maintain that decision is a separate basis for barring these claims.

1951714.1
8/22/08

7

seeking a new finding of probable cause. (DSSOF at ¶ 85). In that motion, Lacy pointed to the very same testimony that he now points to as constituting Jones' false statements, half-truths or incomplete presentation of all relevant evidence. ( *Compare* Doc. #151 at 6 *with* DSSOF, Exhibit 26). Now, as then, Lacy contends that Jones' failure to tell the Grand Jury that none of Mayon's blood or tissue was found on the bullet recovered near the pay phone at Sister's prevented the Grand Jury from making its probable cause determination. And now, as then, Lacy contends that Jones failed to testify about the possible presence of at least three separate groups of shooters in the area at the time Mayon was shot.

The trial court denied Lacy's motion. (DSSOF, Exhibit 6). He did not challenge the trial court's finding by filing a special action as required by Arizona law, and his failure to do so precludes him from re-arguing the same issues here under the doctrine of collateral estoppel. *State v. Moody*, 208 Ariz. 424, 439-40, 94 P.3d 1119, 1134-35. (2004); *see also Haupt v. Dillard*, 17 F.3d 285, 289 (9th Cir. 1994) ("When an individual has a full and fair opportunity to challenge a probable cause determination during the course of the prior proceedings, he may be barred from relitigating the issue in a subsequent § 1983 claim.").

### III. DETECTIVE JONES HAS IMMUNITY FROM PLAINTIFFS' CLAIMS.

#### A. Detective Jones is entitled to absolutely immune.

Plaintiffs failed to respond to Defendants argument that Detective Jones is absolutely immune from claims arising out of his testimony before the Grand Jury. Thus, for the reasons set forth in Defendants' Motion (Doc. #113 at 12), Detective Jones is entitled to summary judgment on all of Plaintiffs claims.

#### B. Detective Jones also has qualified immunity for his investigatory conduct.

Likewise, Detective Jones is entitled to qualified immunity for his actions while investigating this case. Detective Jones is entitled to qualified immunity so long as (1) he did not violation Plaintiffs' constitutional rights, **or** (2) the right was not clearly

established, such that a reasonable officer in Jones' position would not have known the conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200-202 (2001). Jones is entitled to qualified immunity even if he reasonably, but erroneously, thought his conduct did not violate Lacy's civil rights. *Id.* at 205.

Plaintiffs claim that, given the evidence in the case, "no reasonable officer could have concluded that probable cause existed to arrest and indict and prosecute Lacy."[10] (Doc. #151 at 10). As proof, Plaintiffs point to Judge Arellano's findings on Lacy's Rule 32 Petition for Post-Conviction Relief. Yet Judge Arellano's comments were limited to the ineffective assistance of counsel claim (Doc. #157 at 3-6); the court made **no** findings regarding the sufficiency of evidence, let alone whether probable cause existed to arrest Lacy. Plaintiffs therefore have not presented any evidence to support their conclusory statement regarding the lack of probable for arrest, and there is no evidence that Detective Jones violated Lacy's constitutional rights

As set forth in Defendants Motion for Summary Judgment (Doc. # at 2-5), Statement of Facts (DSOF at ¶¶ 1-9, 11-12, 15-18, 21-23, 25-28 and Exhibits 2, 4), and the Supplemental Statement of Facts (DSSOF at ¶¶ 76-78, 82-83 and Exhibit 26), the evidence clearly demonstrates Detective Jones had probable cause to arrest Lacy based on the information available to him at the time. Detective Jones is entitled to qualified immunity.

### IV. DETECTIVE JONES WAS NOT AN OFFICIAL POLICYMAKER FOR THE CITY OF PHOENIX.

In a desperate attempt to save their § 1983 claims against the City, Plaintiffs, **for the first time**,[11] allege that Detective Jones acted as an official policymaker with respect

---

[10] Detective Jones neither indicted, nor prosecuted Lacy. Plaintiffs have not provided any evidence to the Court to overcome the presumption of prosecutorial independence. *See* n.7, *supra*.

[11] This is the very first time that Plaintiffs have alleged that Detective Jones acted as a policymaker, allegedly subjecting the City to liability. No such allegation is made in the First Amended Complaint. Additionally, when asked to provide each and every way in which the City and/or Jones violated § 1983, Plaintiffs referred only to the First Amended Complaint. They did not indicate that they were claiming policymaker liability. Moreover, Plaintiffs never disclosed this theory of liability.

to the investigation and prosecution, and thus the City is vicariously liable for his actions. Plaintiffs do nothing more though, than incorporate, by reference, their argument from their Response to the County Defendants' Motion for Summary Judgment on this point. (Doc. # 151 at 11). Plaintiffs' § 1983 claim fails for a variety of reasons.

To establish municipal liability under *Monell*, Plaintiffs must first establish that Detective Jones had final policymaking authority concerning the action alleged to have caused a particular constitutional or statutory violation at issue. *McMillian v. Monroe Co.*, 520 U.S. 781, 785 (1997). Authority to make municipal policy can be directly authorized by legislative enactment, or it can be delegated by an official who possesses such authority. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Second, Plaintiffs must prove that Jones was the policymaker for the local governing body for the purposes of that particular act. *McMillian*, 520 U.S. at 785. Whether Jones had authority to make policy in any given area is a question of state law. *Pembaur*, 475 U.S. at 483.

First, Plaintiffs' *Monell* claim fails because they have never identified any relevant policy[12]—formal or otherwise—leading to the violation of Plaintiffs' rights. Furthermore, Plaintiffs offer no evidence to establish that Detective Jones was an official policymaker such that the City could be vicariously liable for his actions. Instead, they rely, via an incorporation by reference, on the arguments they raised in the Response to the County and Dr. Keen's Motion for Summary Judgment. None of those arguments, or facts, however, are probative on the issue of whether Jones was a policymaker.

There is no statutory support for the contention that Jones is a policymaker. Under state law, municipalities have the authority to enact a charter, and by so doing, become home-ruled. A.R.S. § 9-283. The Phoenix City Charter provides that the City Council shall have "plenary power to enact and make all proper and necessary ordinances" necessary to carrying out its powers. Phx. Charter, Chpt. XXI., Sec. 9. The Phoenix City

---

[12] Operations Order Nos. 8.1.5(B) and 8.1.6(D)(4), which Plaintiffs have pointed to as forming the basis of their claims against the City, were not in effect at the time of this incident, and cannot satisfy Plaintiffs burden.

Code established the position of Police Chief for the City, and likewise establishes the parameters of the Chief's policymaking authority. City of Phoenix Code, § 2-119. According to the § 2-119, the Police Chief shall be responsible for the following:

> [E]nforcement of State laws and City ordinances, protection of life and property, preservation of law and order, investigation of crimes, . . ., establish training programs, maintain records, provide traffic control and enforcement, . . . [and] establish rules and departmental policies and be responsible for custody of City prisoners.

The foregoing makes clear that Police Chief is the official policymaker with regards to actions of City police officers. In contrast, there is no provision under state law or the City Code authorizing Detective Jones to set policy on behalf of the City of Phoenix. Nor have Plaintiffs presented any evidence that the Police Chief delegated such authority to Detective Jones. Accordingly, there is no evidence that Jones was a policymaker such that the City can be vicariously liable for his acts.

Additionally, it is of no relevance that Jones engaged in discretionary acts on behalf of the City when he allegedly violated Lacy's rights. *See Fiorenzo v. Nolan*, 965 F.2d 348, 351 (7th Cir. 1992) (municipality "is not liable merely because the official who inflicted the alleged constitutional injury had the discretion to act on its behalf; rather, the official in question must possess final authority to establish municipal policy with respect to the challenged action"). In examining this issue, the Court must consider whether Detective Jones' discretionary decisions were "constrained by policies not of [his] making" and whether his decisions were "subject to review by the municipality's authorized policymakers." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

The decisions Jones made regarding the investigation, the testing of evidence, and his testimony in court were all made pursuant to policies he did not write. And, these decisions were subject to review by his superiors, and ultimately the Police Chief, as well as the prosecutor in the case. As such, Jones cannot be said to have been an official policymaker according to *Pembaur*, and the City is therefore entitled to summary judgment on Plaintiffs' § 1983 claim.

## V. PLAINTIFFS' DERIVATIVE FAMILIAL ASSOCIATION CLAIMS FAIL.

The City Defendants recognize that *Smith v. City of Fontana*, 818 F.2d 1411 (9th Cir. 1987) represents this Circuit's law regarding familial relationship claims. For the reasons set forth in Defendants' Motion (Doc. #113 at 14-16), Defendants respectfully argue that *Smith* may no longer be valid, and given the recent trend in other circuits, the Ninth Circuit may be inclined to reconsider *Smith* given the opportunity. City Defendants continue to argue that Plaintiffs must prove Defendants intended to deprive them of their familial relationship, and incorporate by reference the arguments raised by the County Defendants in their Reply to their Motion for Summary Judgment. (Doc. # 163 at 8-9).

## VI. PLAINTIFFS' STATEMENTS OF FACT IN SUPPORT OF THEIR RESPONSE DO NOT COMPLY WITH THE RULES AND SHOULD, IN LARGE PART, BE STRICKEN.

In responding to Defendants' Motion, Plaintiffs were obligated to provide the Court with the specific admissible facts which are in dispute and show a genuine issue for trial. *See* Rule 56(e)(2). According to LRCiv 56.1(b), "[e]ach additional fact [creating a material issue of fact] shall be set forth in a separately numbered paragraph and shall refer to a specific admissible portion of the record where the fact finds support." Plaintiffs' Additional Facts (Doc. #156) does not comply at all with the requirement that each paragraph actually contain a "statement of fact," and in many instances does not comply with the requirement that Plaintiffs point to a specific admissible portion of the record as support. Instead, Plaintiffs' Additional Facts is nothing more than an index of exhibits, most of which are either inadmissible under the Rules of Evidence, or inadmissible pursuant to Rule 37, Fed.R.Civ.P.[13] Similarly, many of the sentences in Plaintiffs' "Factual Background" portion of their Response lack any citation to any statement of fact, or evidence in the record. Plaintiffs may not simply assert facts, without support, in opposing the City Defendants' Motion, and these Defendants move to strike any and all statements in the Factual Background section that lack a citation.

---

[13] Defendants incorporate by reference all deficiencies pointed out in their Controverting Statement of Facts and Objections to Plaintiffs' Additional Facts, as well as all arguments made therein regarding why exhibits, including the reports of D.P. Van Blaricom and Galen Warren, should be stricken.

1951714.1
8/22/08

12

The trial court is not required to comb through the record to find genuine issues of material fact. *See Forsberg v. Pacific Northwest Bell Telephone Co.*, 840 F.2d 1409, 1418(9th Cir. 1988). Moreover, in responding to a motion for summary judgment, Plaintiffs cannot simply rely on the allegations contained in their pleadings, but must instead put forth probative, admissible evidence demonstrating a material issue of fact. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

Of course, the Court can only consider admissible evidence. *See* Fed.R.Civ.P. 56(e); *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002)("unauthenticated documents cannot be considered in a motion for summary judgment."). The excerpts from the police report consisting the summary of King's interview, (Plaintiffs' Exhibit "A" to their Statement of Facts Disputing the City Defendants' Statement of Facts) constitute inadmissible double hearsay under Rule 802, Fed.R.Evid. Additionally, the report has not been properly authenticated under Rule 901(b)(1) or (7), Fed.R.Evid. Plaintiffs failed to submit a verification from the custodian of records from the police department, or the actual transcripts from the interview. As such, the police report excerpts submitted by Plaintiffs are inadmissible and cannot be considered by the court. *See Kight v. Guilford*, 2008 WL 2026355 (D. Ariz. 2008)(unauthenticated police reports are inadmissible hearsay and not to be considered by trial court in ruling on motion for summary judgment).

The same is true of D.P. Van Blaricom and Galen Warren's Declarations. Plaintiffs did not disclose anything other the names of these two experts on March 3, 2008, the deadline for Plaintiffs to provide their expert disclosures. (DSSOF at ¶¶ 89-90). Plaintiffs did not provide Van Blaricom or Warren's expert reports until June 30th, the deadline for supplementing all expert disclosures. (DSSOF, Exhibit 25). Moreover, the disclosure was made six days *after* the deadline for filing dispositive motions. (Doc. # 61). The City Defendants therefore did not, and could not, deal with Plaintiffs' expert opinions in their Motion. Plaintiffs were obligated to show justification or harmlessness as to their late disclosures, but have failed to do so. *See Yeti By Molly, Ltd. v. Deckers*

1  *Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001).

2  Plaintiffs claim that the City Defendants are not prejudiced by their extremely late expert disclosure, and suggest that the issue can be resolved by extending the deposition deadline to allow the City Defendants to depose these experts. (Doc. #151 at 8 n.1). This will not cure the problem. *See Cecala v. Newman*, 532 F.Supp.2d 1118, 1157 (D. Ariz. 2007) (citing *Yeti By Molly*, 259 F.3d at 1007 (litigant not required to depose opposing party's damage expert when that expert's report not timely disclosed)); *see also Santiago-Diaz*, 456 F.3d 272, 277 (1ST Cir. 2006) ("[P]laintiff's foot-dragging … in providing his report deprived defendants of the opportunity to prepare their defenses."). Even if the City Defendants depose Van Blaricom and Warren now, they will not be able to provide those opinions to their own experts for rebuttal.

Additionally, these depositions would occur outside the schedule already set by the Court, yet no good cause has been shown as to why this is necessary. *See Santiago-Diaz*, 456 F.3d at 277 ("Whenever a party, without good cause, neglects to comply with reasonable deadlines, the court's ability to manage its docket is compromised. Courts are entitled to take sensible measures to guard against such debilitating occurrences."). Revising the discovery schedule would likewise require the Court to continue a trial, which it has indicated will not be continued. Therefore, given Plaintiffs' abject failure to prove good cause and/or seek leave of the Court for the late disclosure, any and all references to Van Blaricom and Warren's opinions, their reports, and their declarations should be stricken and the Court should disregard these materials in deciding the City Defendants' Motion for Summary Judgment.

### VII. CONCLUSION.

For the foregoing reasons, and those set forth in Defendants' Motion for Summary Judgment, the City Defendants request that this Court grant summary judgment in their favor on all remaining claims.

RESPECTFULLY SUBMITTED this 26th day of August 2008.

JONES, SKELTON & HOCHULI, P.L.C.


By   s/Michele Molinario
Kathleen L. Wieneke
Erin E. Byrnes
Michele Molinario
2901 North Central Avenue, Suite 800
Phoenix, Arizona  85012
*Attorneys for Defendants City of Phoenix and Ronald Jones*

## CERTIFICATE OF SERVICE

☒   I hereby certify that on August 26, 2008, I electronically transmitted the attached document to the Clerk's Office using CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

The Hon. Frederick J. Martone
Judge, United States District Court
401 West Washington
Phoenix, Arizona  85003

Richard T. Treon, Esq.
TREON, AGUIRRE & NEWMAN
2700 North Central Avenue, Suite 1400
Phoenix, Arizona 85004-1133
*Attorneys for Plaintiffs*

Randall R. Garczynski
Deputy County Attorney
Maricopa County Civil Division
 222 North Central Avenue, Suite 100
Phoenix, Arizona  85004-2206
*Attorneys for Defendants Maricopa County and Keen*

  s/Letitia L. Wright

1951714.1
8/22/08

15