**WO**

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BYRON TENNEL LACY, an unmarried man; DEBRA ANN FINLEY, his mother,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF MARICOPA; et al.,<br><br>Defendants. | No. CV-06-2865-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the Plaintiffs' Motion In Limine and/or Objection to Defendant's Notice of Filing Proposed Revised Joint Final Pretrial Order: To Add Amended Autopsy Report and Photographs as Exhibits; and Identify Dr. Laura Fulginiti as the Party Who Can Testify As to the Exam Procedure, Cranial Measurements, and Other Facts Contained in the Autopsy. (Dkt. # 244.) For the reasons stated below, the Plaintiffs' Motion is denied.

At the Final Pretrial Conference in this matter that occurred on February 20, 2009, counsel for the remaining Defendants informed the Court that the parties had been discussing the exhumation of the body of Shawn Mayon to determine the size of the "defect," or bullet hole, exiting his skull. Counsel informed the Court that the parties had reached "preliminary agreement" regarding conducting such an examination and entering into evidence the results of the defect measurement.

1 The Court responded that discovery had long ago closed and that while it "understood the value" of the evidence that might be obtained by an exhumation, and would be willing to consider it if the parties agreed to such a procedure, "it would seem to require experts again to take a look at it," and the Court was reluctant to again open discovery to such an extent. To this, the Defendants' counsel responded "What we preliminarily talked about is the Maricopa County Medical Examiner's office doing the opening of the coffin with observation by experts from both sides, Dr. Nolte and Dr. Griest, and having a recording with scaled photographs of the exact measurements that are going to be taken."

After further discussing this and other matters, the Court ruled that it would permit the Defendant to designate Dr. Joseph Hefner as a substitute forensic anthropologist in the place of Dr. Komar, and would further permit the Plaintiff to designate a rebuttal expert in response to Dr. Hefner. It would then permit both parties to depose these two newly designated forensic experts. But it would not allow any additional discovery unless Mrs. Mayon authorized the exhumation of her ex-husband and the parties arrived at the protocols "by which they will resolve this case." In such a case, the Court determined, "I'll admit any evidence or testimony that results from that exhumation." Counsel for the Defendants clarified that the parties would not have to arrive at protocols that would resolve the entire litigation prior to being able to admit evidence arising from the exhumation.

| | |
|---|---|
| Mr. Garczynski: | Did the Court say it [the agreed on protocol] has to resolve the litigation? |
| The Court: | I probably did, but I – but I'm – I'll revoke that condition. |
| Mr. Garczynski: | With that removed, I understand it, appreciate it, thank the Court for that. |
| The Court: | Okay do you understand that change Mr. Treon? |
| Mr. Treon: | That's actually – that's actually how I understood what you were saying. |

Within several weeks of the final joint pretrial conference, the Court required the parties to file a joint status report concerning the status of the exhumation. In that status report, signed by both parties, the parties detailed the exhumation procedures.

> Undersigned for defendants has made the arrangements and entered into contracts with the Cemetery, . . . for the

- 2 -

> disinterment and re-interment for the deceased. Additionally, undersigned has made the necessary arrangements with the Maricopa County Medical Examiner's office to conduct the examination and measurement of the exit wound, after which, the Maricopa County Medical Examiner's Office will file an amended autopsy report to case no. 94-1120.
>
> The exhumation and examination will be observed by undersigned counsel for Plaintiffs and Defendants along with Plaintiff's expert witness, Dr. Karen Griest and Defendant's expert witness, Dr. Kurt B. Nolte.
>
> The tentative date of the exhumation and examination is set for **March 24, 2009, and commencing at approximately 7:00 a.m.**
>
> Defendants have agreed to advance the cost of the exhumation and examination of Mr. Mayon, excepting the cost of Plaintiff's expert.
>
> The parties are further progressing on a stipulation regarding the admissibility of all evidence produced by the examination and additional stipulations contingent upon certain specific measurements resulting from the amended autopsy report.

(Dkt. # 230.)

No objections to the exhumation, or its procedure, were filed with this Court. The exhumation thereafter took place and the decedent's skull defect was measured. As the status report indicated, both counsel were present as were their experts. The parties dispute the extent to which the parties' experts were or should have been allowed to participate in the measurements and testing of the skull of the decedent. But as the status report indicated, the examination and measurement of the exit wound were conducted by Dr. Laura Fulginiti and Dr. John Hu of the Maricopa County Medical Examiner's office. Dr. Fulginiti actually performed the measurements of the defect.

After the exhumation and measurements, the parties were not able to arrive at stipulations or protocols that would resolve the case. Thereafter, the Defendants moved the court to add a witness and several exhibits to the joint pretrial order. The exhibits consisted of photographs and the amended autopsy report that resulted from the exhumation. Dr. Laura Fulginiti is designated as a witness who can testify as to the examination upon

1 exhumation. The Plaintiffs object to the addition and filed a motion in limine to preclude it.
2 (*See* Dkt. # 244.)

3 The Plaintiffs object because (1) discovery is already closed; (2) the parties could not
4 agree on a protocol for the procedure, and thus the results should not be admitted; (3) Dr.
5 Fulginiti is biased; (4) the amended autopsy report is erroneous in several details; (5) the
6 defect measurements taken post-exhumation should have been conducted by Dr. Hu.

7 The Court finds none of these objections persuasive.

8 As the transcript of the February 20 pretrial conference bears out, the Plaintiffs agreed
9 to proceeding with the exhumation in the hope that "protocols" worked out based on the
10 results of the measurement of the skull defect could resolve this lawsuit short of trial. It is
11 clear from the transcript, however, that the parties understood that if they proceeded they did
12 not have to agree to case-dispositive protocols for the results of the exhumation to be
13 admissible in court.

14 The Plaintiffs now argue that they did not arrive at a stipulation as to how the
15 exhumation was to be carried out. But, the parties' joint status report to the court concerning
16 the exhumation demonstrates that the parties did agree to the essential details of the
17 exhumation procedure. It further appears to the Court that the procedures described in the
18 joint status report were the procedures that were followed at the exhumation.

19 The Plaintiffs now complain that it was their understanding that Dr. Hu, not Dr.
20 Fulginiti was to conduct the defect measurements. But the status report merely indicates that
21 the Maricopa County Medical Examiner's Office would conduct the examination and
22 measurement. Dr. Fulginiti is apparently part of that office, and actually conducted the
23 measurements. No objections were raised to the Maricopa Medical Examiner's office
24 performing the examination either at or prior to the exhumation. And, upon avowal of
25 counsel, Dr. Hu is not available for trial, and, at any rate, it was Dr. Fulginiti who conducted
26 the measurements in the presence of counsel and the experts for both parties.

27 The Plaintiffs assert that Dr. Fulginiti is biased and that her Amended Autopsy Report
28 contains errors. While such matters may be the appropriate topic of cross-examination, they

- 4 -

1 will not preclude the Court from allowing Dr. Fulginiti to testify to the limited scope of
2 matters identified by the Defendants.  The Defendants assert that they only desire Dr.
3 Fulginiti's testimony to "testify as to the exam process, cranial measurements taken, and
4 other facts contained in the Amended Autopsy Report, as well as identify the nature and
5 content of the photographs taken and the relationships thereof to the measurements recorded
6 in the Amended Autopsy Report."  (Dkt. # 250.)

7       To the extent Dr. Fulginiti's testimony is so limited, she will be allowed to testify at
8 trial.  She will also be allowed to testify to establish appropriate foundation for the
9 photographs and the Amended Autopsy Report which may prove to be admissible.  To the
10 extent the Plaintiffs deems additional exhibits or discovery necessary to an effective cross-
11 examination of Dr. Fulginiti, the Plaintiffs will identify such exhibits for the Court's
12 consideration prior to the pretrial conference scheduled for June 11, 2009.

13       DATED this 3rd day of June, 2009.

*[signature]*
G. Murray Snow
United States District Judge